### In re AMERICAN BREWING CO.

### MAGNUS et al. v. KETCHAM.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1902.)

#### No. 777.

1. BANKRUPTCY—ADJUDICATION ON DEFAULT—CONCLUSIVENESS.

An adjudication of involuntary bankruptcy duly entered on default for want of an answer to the petition is as binding on the bankrupt and creditors as one entered upon a hearing, and is conclusive of the commission of the acts of bankruptcy charged in the petition.

2. SAME.

A petition for involuntary bankruptcy was filed against a corporation, alleging as one act of bankruptcy that the corporation, on a date named, and within four months, suffered and permitted, while insolvent, a creditor to obtain a preference through legal proceedings, by obtaining a judgment by confession, on which an execution had been issued and levied on property of the corporation. An injunction was prayed for, and issued, restraining a sale under such execution. The judgment creditor appeared and moved to dissolve the injunction, and by agreement it was modified to permit the sheriff to sell the property and pay the proceeds into court, to abide the adjudication of the rights of the parties. Neither the bankrupt nor the judgment creditor answered the petition, and an adjudication of bankruptcy was subsequently made by default, in due form. *Held*, that the adjudication was binding upon the judgment creditor, and conclusive upon the question of the insolvency of the bankrupt on the date when his judgment was taken, and hence of the illegality of the preference thereby obtained.

Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois.

There is no dispute about the facts in this case, which are as follows, as exemplified by the record:

On March 10, 1899, John McNulta, as receiver of the National Bank of Illinois, together with two others,—the three being creditors of the American Brewing Company,—petitioned to have the brewing company adjudicated an involuntary bankrupt. The petition shows that John McNulta, as receiver, on March 9, 1899, recovered in the United States circuit court a judgment against the brewing company for $27,744.20. The two other petitioners had claims against the brewing company, respectively, for $4,775 and $396.17; the total of the claims of the petitioners aggregating $32,915.37. The petition alleges that the brewing company is insolvent, and is indebted to the extent of over $900,000. The following acts of bankruptcy are expressly charged: (a) That on February 27, 1899, while insolvent, it permitted Magnus' Sons, one of whom (August) is a brother-in-law of George A. Weiss, president of the brewing company, to procure a judgment by confession in the superior court of Cook county against the brewing company for $10,050; that on that date an execution issued, and was levied by the sheriff of Cook county upon the personal property of the brewing company, including beer manufactured and in process of manufacture; that the sheriff has advertised the property for sale on March 13, 1899. (b) That the brewing company on February 9, 1899, delivered its judgment note to the Illinois Trust & Savings Bank, which bank, at a time when the brewing company was insolvent, entered judgment thereon in the superior court of Cook county on March 1, 1899, for $2,705.18; that upon that date execution issued, and a levy was made by the sheriff on the same property as that levied upon under the judgment in favor of Magnus' Sons. (c) That on February 27, 1899, the brewing company held a meeting of its board of directors, "at which meeting said board of directors resolved to forthwith cease doing business, with the intention of never resuming the same, and that the officers of said American Brewing Company forthwith then and there abandoned its property and corporate franchises; * * * that on said February 27, 1899, * * * at the time of the adoption of said resolution, said American Brewing Company was insolvent." (d) That on February 28, 1899, there was filed in the circuit court of Cook county a bill by two stockholders, owning 320 shares, and a creditor of the brewing company; one of said stockholders (Binder) being a brother-in-law of said Weiss, the president of the brewing company; the claim of the creditor (Daly), a driver of a beer wagon for the brewing company, being for $100. That immediately upon the filing of the bill the brewing company consented to the appointment of a receiver by the state court, and a receiver was accordingly appointed on February 28th. (e) That on February 26, 1899, the brewing company transferred very valuable property to the Gottfried Brewing Company of Chicago, with the intention to hinder, delay, and defraud the creditors of the American Brewing Company; that John H. Weiss is the president of the Gottfried Brewing Company, and is the brother of George A. Weiss, president of the American Brewing Company; that the good will of the American Company consisted of its patronage and customers, with whom it had built up an annual trade of 70,000 barrels of beer; that on February 26, 1899, the American Company, through its president, George A. Weiss, delivered to his brother John H. Weiss a list of the customers and trade of the American Company, and transferred and delivered to the Gottfried Company the good will, trade, and customers of the American Company, without any consideration; that said good will, trade, and customers were a very valuable and substantial part of the property of the American Company, and the acquisition of which had cost the American Company $350,000; that George A. Weiss immediately associated himself with the Gottfried Company, and took over to the latter a number of the employés of the American Company, in order to maintain and control for the Gottfried Company the trade and good will transferred to it by the American Company; that in order to carry out this scheme the Gottfried Company, shortly prior to February 26th, stocked the ice house of the American Company with beer belonging to the Gottfried Company, and on the day (February 28th) and preceding the day of the

112 F.—48

filing of the bill for a receiver the Gottfried Company, in its wagons, delivered its beer to the customers of the American Company.

Upon these specific grounds the petitioners prayed for a restraining order against the sheriff, Magnus' Sons, and others, and for the issuance of a subpœna. On March 10, 1899, the date the petition was filed, a restraining order as prayed for issued, and was served on the same day. On March 17th it was, upon motion of solicitors of Magnus' Sons, "all parties in interest consenting thereto," ordered that the injunctional order be modified so as to permit the sheriff to sell the property levied on, and that the net proceeds of the sale shall be paid to the clerk of the district court, "to abide the further adjudication of the rights of the parties in the premises." On March 10th, the day the petition was filed, the brewing company was served with a subpœna. Neither the sheriff, Magnus' Sons, American Brewing Company, nor any of the other respondents, answered. Accordingly, on April 5, 1899, the petition went by default, and an order was entered that "the said American Brewing Company is hereby declared and adjudged a bankrupt accordingly." The order of adjudication followed the form prescribed by the supreme court. 172 U. S. 688, 18 Sup. Ct. xxiv., 43 L. Ed. 1211. On April 6, 1899, the sheriff of Cook county, pursuant to the consent order of March 17th, turned over to the clerk of the United States district court $9,756.69, the proceeds of the sheriff's sale. On October 2, 1899, Magnus' Sons, upon their own motion, were given leave to file an intervening petition, and the trustee in bankruptcy was directed to answer the petition within 15 days. On October 2, 1899, Magnus' Sons filed their intervening petition, in which they allege that on January 8, 1898, the brewing company applied to the petitioners to sell to the brewing company during the year following malt and brewers' supplies to the extent of $10,000; that the petitioners refused to make such sale and extend credit except upon condition that the brewing company should give petitioners a note, with power of attorney to confess judgment, for $10,000, and should agree that petitioners might at any time, whenever the brewing company failed to pay bills when due, at once enter up judgment on the note, and have immediate execution issued and levied, "and thereby secure a preference over the other creditors of said American Brewing Company to the extent of the value of said personal property"; that the brewing company assented to said terms, and gave its judgment note for $10,000; that prior to February 27, 1899, after the making of said agreement, petitioners delivered to the brewing company a large amount of brewers' supplies upon the terms of said 'agreement; that the value of the supplies so delivered was far in excess of $10,000; that on February 27, 1899, said supplies so delivered amounted to $11,000, of which $5,000 was past due; that on February 27, 1899, petitioners brought suit on the note, and recovered judgment by confession thereon, and caused an execution to issue on the judgment, and a levy to be made by the sheriff upon the personal property of the brewing company; "that at the time of the making of the aforesaid agreement, * * * at the time of the execution and delivery of the aforesaid $10,000 note, * * * at the date of entry of said judgment, and at the date of said levy of said execution, said American Brewing Company was solvent and was a going concern"; that the sheriff of Cook county levied said execution, and gave notice of sale for March 13, 1899; that on March 10, 1899, John McNulta, as receiver, and others, filed their petition in the district court to have the brewing company declared bankrupt, and that on said date the district court ordered a warrant to issue to the marshal to seize the property of the brewing company, and ordered that the sheriff of Cook county be restrained from interfering with the property of the brewing company; that on March 20, 1899, "your petitioners appeared before said district court and moved for the dissolution of said injunction; * * * thereupon, * * * by consent of your petitioners and said petitioners in bankruptcy," the district court modified the injunction so as to permit the sheriff to sell and pay over the proceeds of the sale to the clerk of the district court; that the sheriff did sell and did turn over said proceeds to the district court clerk; that on April 6, 1899, "said American Brewing Company, upon the petition, hereinabove mentioned, of said John McNulta, receiver as aforesaid, * * * was declared a bank-

rupt in the United States district court, but that neither of your petitioners was a party to said proceeding or contested said adjudication." The intervening petition prays that Ketcham, trustee, be required to answer the petition, and that "upon the hearing of this cause the said fund now in the hands of said clerk * * * may be directed by this court to be turned over to your petitioners. * * *"

Thereafter, on October 21, 1899, Ketcham, trustee, filed an answer to said petition. The respondent denies knowledge of the allegation of the petition as to the business relations between petitioners and the brewing company, and as to the alleged conditions upon which the judgment note was given. Respondent admits the procurement of the judgment, and the issuance and levy of execution thereunder, and admits that the proceeds were turned in to the clerk of the district court. Respondent "denies explicitly that the said petitioners are entitled to said fund, and avers that the giving of said note and the entry of said judgment thereon were contrary to the provisions of the general bankruptcy law," and says, "It was attempted to give said petitioners a preference over the other creditors of said brewing company." Respondent further states: "That the American Brewing Company was not solvent at the time of giving said note, and had not been for a long time before. That it was at that time heavily indebted to various unsecured creditors in sums aggregating $150,000 or more. That its property was incumbered for nearly $900,000. That such facts were known to the said petitioners at the time of taking said note. * * * Respondent denies it was competent for said petitioners to so obtain a preferential lien or security. * * * That the taking and retaining of said note and entry of said judgment were acts of bankruptcy. * * * That said adjudication in bankruptcy was regularly taken in this court on the 6th day of April, 1899. * * * That, according to law, the money so obtained from the sale of said property now in the hands of the clerk * * * properly belongs to him, as such trustee in bankruptcy; and he therefore prays that the said petition be dismissed, and that the clerk be instructed by order of court to turn the money over to this respondent." On February 13, 1900, the intervening petitioners, Magnus' Sons, filed a general replication to the answer, and in their replication, among other things, say "that they will maintain and prove their intervening petition to be true and sufficient in the law to be answered unto, * * * all of which matters and things these repliants are ready to aver, maintain, and prove. * * *"

On February 13, 1900, it was ordered "that the petition of Magnus et al., and the answer of Frank D. Ketcham, trustee, and the replication thereto," be especially referred to Referee Eastman, to take testimony and report conclusions. On July 11, 1900, Referee Eastman filed his report, reciting the record, and reporting that no direct evidence was offered to show that the brewing company was insolvent at the time of the entry of the judgment (February 27, 1899); further, that Magnus' Sons assert that, because no proof was taken showing such insolvency, the fund cannot be claimed by the trustee. The referee reports that the intervening petitioners offered no evidence to show the solvency of the brewing company, and that "the trustee, evidently, was disinclined to go into the matter of attempting to prove insolvency of that date, owing to the fact that it would be proved only by an expensive and laborious process." The referee then says: "I am of the opinion: That the creditors having been permitted by the statute to appear and contest any of the grounds of the involuntary petition, that Magnus was thereby a party to the record. The question of insolvency was a material part of each of the acts alleged, and the insolvency of the 27th of February a material part of one of the acts, in which Magnus himself was particularly concerned. That he is bound by the adjudication, notwithstanding the adjudication was in general terms, and did not especially find each and every one of the acts of the involuntary petition to be proven." The opinion of the referee shows that he considered the adjudication as conclusive, and not merely prima facie, evidence that the brewing company was insolvent on February 27, 1899, the date of the judgment. On July 11, 1900, Magnus' Sons filed objections to the referee's report; the principal ones, in the language of the objectors, being as follows: "That said referee refused

to permit these petitioners to introduce evidence before him * * , * to show that the American Brewing Company was solvent at the time of the entry of the judgment"; also because the referee found that petitioners "had precluded themselves from claiming or showing that said American Brewing Company was solvent on February 27, 1899"; also because the referee found that the adjudication of bankruptcy "is res adjudicata as between these petitioners and the trustee in bankruptcy, * * * and that these petitioners cannot question the insolvency of said American Brewing Company on February 27, 1899." When the argument on the objections came up in court, it was ordered "that said exceptions be, and the same hereby are, sustained; and it is further ordered that the matter be re-referred to the referee, to take proofs as to the solvency of said bankrupt on February 27, 1899." Upon the entry of said order it was said by the court that "it would be but equitable to allow the aforesaid Magnus an opportunity to prove, if he could, the fact of solvency of that date." The referee, accordingly, on the re-reference, afforded the intervening petitioners an opportunity to make such proof; and their counsel, "after repeated adjournments, advised me [the referee] that he did not desire to offer any proof on that matter, thereby waiving the privilege that was accorded him by the re-reference." Therefore the referee reported in favor of the disallowance of the claim of Magnus' Sons, and that the funds should be turned over to the trustee. Petitioners filed objections to the supplemental report of the referee. These objections are substantially like those filed to the first report. The matter then came on upon the objections which stood as exceptions to the original and supplemental reports of the referee, and the court sustained the reports, and directed that the fund in the hands of the clerk should be paid to the trustee in bankruptcy.

Amos C. Miller, for appellants.
Levy Mayer and George W. Wall, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge, upon the above statement of facts, delivered the opinion of the court.

This is a contest on the part of appellants Magnus to gain a preference by judicial proceeding against the bankrupt taken within four months prior to the adjudication in bankruptcy, contrary to the letter and spirit of the bankrupt law. The avowed purpose of taking the judgment notes, with power to enter judgment at any time by confession, was to secure appellants against the claims of other creditors, and to give them a preference. That would be legitimate and proper if no bankrupt law were in force, and a race of diligence in priority were allowable. But one purpose and effect of the bankrupt law is to put an end to such a race of diligence, and to divide the estate ratably among creditors. The essential ethics of that law is, that "equality is equity." It is true, however, that under the law a limit must be fixed when this contest for priority by legal proceedings must cease. The time fixed is four months prior to an adjudication in bankruptcy. The appellants' judgment by confession was obtained on February 27, 1899. On that same day the brewing company, by its board of directors, resolved to immediately cease doing business, and thereby abandoned its corporate franchises. On the day previous (February 26th) the American Brewing Company, through its president, George A. Weiss, conveyed to the Gottfried Brewing Company, of which John H. Weiss, a brother of George A.

Weiss, was president, a valuable part of the property of the American Brewing Company, consisting of its good will, trade, and customers, worth $350,000, without any consideration, and with the intention, as is alleged in its petition, to put the brewing company into bankruptcy, and to hinder, delay, or defraud its creditors. But a little more than a month afterwards, on April 5, 1899, the American Brewing Company was adjudged a bankrupt upon a petition alleging various acts of bankruptcy, and, among the rest, suffering judgment to be entered in favor of appellants on February 27th. Of course, if the appellants, by their judgment and levy of execution upon the property of the brewing company,—this being a legal proceeding,—obtained a preference, it was clearly void, within the provisions of the bankrupt law, as being within four months previous to the adjudication in bankruptcy, unless by some plausible scheme or device it can be made to appear that the American Brewing Company was not insolvent at the time such supposed preference was gained. See In re Richards (decided by this court) 37 C. C. A. 634, 96 Fed. 935. So that the struggle in this case has been and is to make good this proposition. This, at first, would seem a rather difficult task, as it involves the opening up or practical setting aside of the adjudication in bankruptcy, which was held by the referee to be conclusive upon the question of insolvency, and without a particle of proof anywhere in the record or before the court to show solvency. Supposing it should be held that the adjudication is not conclusive upon all the matters charged in the petition, still it must be conceded to be presumptively true as to all those allegations. If a judgment does not conclude anything even prima facie, it would be of little use to enter one. But if the judgment is only presumptively correct and binding, still the appellants were given the opportunity upon the re-reference by the court, upon their own petition, alleging solvency on February 27th, to the referee, to enable them to prove solvency, to introduce evidence upon that question, which, after the case was held for some time, they declined to offer, and the referee so reported to the court. Having had that opportunity, which they sought from the court, it would seem inconsistent now that they should be able to avail themselves of all the benefit they could have derived from sustaining their allegations of solvency at the time the judgment by confession was rendered, when opportunity was given. The maxim, "Who seeks and will not take when once 'tis offered shall never find it more," is sometimes good in law.

But we are of opinion that the decision of the referee was correct, in holding that the adjudication in bankruptcy was binding upon the appellants, and conclusive upon the question of insolvency. The appellants, as well as the brewing company, were essentially parties to the petition. In that petition, as one of the grounds of bankruptcy, it was alleged that the American Brewing Company was insolvent, and was indebted in the sum of over $900,000, and that within four months next preceding the date of the filing of the petition it committed an act of bankruptcy, in that it did on February 27, 1899, suffer or permit, while insolvent, Albert Magnus and August Magnus, partners doing business under the firm name of Magnus' Sons,

to obtain a preference through legal proceedings, which preference consisted in the procurement by confession on the date aforesaid by said A. Magnus' Sons of a judgment in the superior court of Cook county, Ill., against said American Brewing Company, for the sum of $10,050 and costs of suit; that upon said judgment an execution was issued out of said court to the sheriff, and was levied upon a large amount of personal property of said brewing company. An injunction was issued on March 10th, when the petition in bankruptcy was filed, expressly ordering that the sheriff and Magnus' Sons be restrained from further interfering with the property, or from proceeding any further in the matter of said execution. The appellants had an opportunity of answering this petition, but neither they nor the American Brewing Company made any appearance or answer, and judgment went by default in accordance with the law and the forms and practice prescribed by the supreme court in such cases. To say now that the judgment is not binding upon the question of insolvency is to run counter to well-established principles of law applicable to judgments. If it were necessary, in order to bind creditors by a judgment in bankruptcy, that they should appear and answer, as they always have a right to do, then an adjudication could be prevented simply by creditors abstaining from appearing in the proceedings. But it is well settled that the proceedings are in a large sense in rem, and are binding whether the bankrupt or creditors appear or not. In re Skinner (D. C.) 97 Fed. 190; In re Henry Uhlfelder Clothing Co. (D. C.) 98 Fed. 409; In re McKinley, 7 Ben. 562, Fed. Cas. No. 8,864; Shawhan v. Wherritt, 7 How. 627, 12 L. Ed. 847; In re Wallace, Deady, 433, Fed. Cas. No. 17,094; In re Banks, Fed. Cas. No. 958; Morse v. Godfrey, 3 Story, 364, Fed. Cas. No. 9,856; Rayl v. Lapham, 27 Ohio St. 452; Lewis v. Sloan, 68 N. C. 557; Thornton v. Hogan, 63 Mo. 143.

The bankrupt act (section 18b) provides that the bankrupt or any creditor may appear and plead to the petition within 10 days after the return day, or within such further time as the court may allow. And it is further provided, in subdivision "d," that, if the bankrupt or any of his creditors shall appear within the time limited and controvert the facts alleged in the petition, the judge shall determine, as soon as may be, the issues presented by the pleadings. And by subdivision "e" it is further provided that if, on the last day within which pleadings may be filed, none are filed by the bankrupt or any of his creditors, the judge shall on the next day, if present, or as soon thereafter as practicable, make the adjudication or dismiss the petition. From this provision it is quite clear that, in order to bind creditors by an adjudication, it is not essential that they should appear. It is enough that they have the right and opportunity to appear, whether they appear or not. It was clearly the privilege, as well as the duty, of the appellants, if they wished to dispute the allegation in the petition that the confession of judgment on February 27th was an act of bankruptcy, to appear and controvert the facts so alleged. Not having done so, we think the return of the referee was right,—that the judgment was binding upon them. They were not interested in several other acts of bankruptcy alleged, but they were interested in

that, and it was their duty, as well as privilege, to defend against it. From all the allegations and proceedings in the record, it would seem quite manifest that the true reason for the appellants not appearing was that the brewing company was hopelessly in debt and insolvent at the time Magnus' Sons obtained their judgment, and was not only not a going concern, hoping and striving to pull through and pay its debts, but had already resolved to cease doing business at all.

A judgment by default is just as conclusive an adjudication between parties of whatever is essential to support the judgment as one rendered after answer and contest, and in such case facts are not open to further controversy if they are necessarily at variance with the judgment on the pleadings. Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 735, 39 L. Ed. 859. And in Garner v. Bank (C. C.) 89 Fed. 636, it was held, in full accordance with the general doctrine of the cases, that a judgment which determines the right of a party, though by default, is a judgment on the merits, and is conclusive as to such right and all matters which properly belonged to the subject, and which the parties, in the exercise of reasonable diligence, might have brought forward therein. These cases are in line with the general doctrine on this subject, as appears by the adjudged cases. In re Skinner (D. C.) 97 Fed. 190; Barton v. Anderson, 104 Ind. 578; 4 N. E. 420; Greeley v. Sample, 22 Iowa, 338; Briggs v. Richmond, 10 Pick. 391, 20 Am. Dec. 526; Creamer v. Dikeman, 39 N. J. Law, 195; Newton v. Hook, 48 N. Y. 676; Marks v. Sigler, 3 Ohio St. 359; Doyle v. Hallam, 21 Minn. 515; 2 Black, Judgm. 697; 1 Herm. Estop. § 54; 6 Enc. Pl. & Prac. 115; In re Columbia Real Estate Co. (D. C.) 101 Fed. 965; Voorhees v. Bank, 10 Pet. 449, 9 L. Ed. 490; In re Henry Uhlfelder Clothing Co. (D. C.) 98 Fed. 409.

We are of opinion, therefore, that the decision and report of the referee to the effect that the claim of appellants should be disallowed, and the funds in the hands of the clerk derived from the sale upon execution, amounting to the sum of $9,756.69, be paid over to the trustee in bankruptcy, to become a part of the general estate of the bankrupt, is correct; and the order and decree of the district court affirming the referee's report, and dismissing appellants' petition, and ordering the said money to be paid over, are hereby affirmed.