COOK v. ROBINSON (FAIRBANKS BANKING CO., Garnishee; H. P. PARKIN, Intervener).†

(Circuit Court of Appeals, Ninth Circuit. March 18, 1912.)

No. 2,013.

1. BANKRUPTCY (§ 198*)—LIENS—VACATION—STATUTES.

Bankruptcy Act July 1, 1898, c. 541, § 67c, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), provides that a lien created or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment on

mesne process or a judgment by confession, which was begun against a person within four months before the filing of the bankruptcy petition, shall be dissolved by the adjudication if the lien was obtained and permitted while the defendant was insolvent, and its existence or enforcement will work a preference, or the parties to be benefited thereby had reasonable cause to believe that defendant. was insolvent and in contemplation of bankruptcy, or that the lien was sought and permitted in fraud of the provisions of the act; but by subdivision "f" all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months before bankruptcy are made void in case he is adjudged a bankrupt, etc. *Held*, that such subdivisions are repugnant to each other, and that subdivision "f" is controlling.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–316; Dec. Dig. § 198.*]

**2. BANKRUPTCY (§ 100*)—ADJUDICATION—PARTIES—EFFECT.**

Creditors of a bankrupt are parties to the proceedings to have him so adjudged, and are precluded by the adjudication in so far at least as it determines the debtor's insolvency, and that he has committed an act of bankruptcy within four months prior to the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. § 100.*]

**3. BANKRUPTCY (§ 100*)—LIENS—VACATION.**

Bankruptcy Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy shall pass freed therefrom to the trustee unless the court shall order that the lien be preserved for the benefit of the estate. *Held*, that where an attachment was levied on the property of a bankrupt within the four months' period, such attachment being rendered void by reason of the subsequent adjudication, the insolvency of the bankrupt at the time the attachment was levied was not material, in defense of the trustee's right to intervene and recover the attached property; such issue having been conclusively determined by the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. § 100.*]

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska.

Action by Henry Cook against Charles J. Robinson and the Fairbanks Banking Company, garnishee, in which H. P. Parkin, trustee in bankruptcy of the defendant Robinson, intervened. From an order vacating an attachment, plaintiff brings error. Affirmed.

On July 18, 1910, plaintiff in error, the plaintiff below, instituted an action against Robinson, one of the defendants in error, to recover upon two promissory notes aggregating $10,000; one having been given September 20, 1909, and the other November 12, 1909. On the same day a writ of attachment issued, and the same was on July 18th, July 19th, and August 4th of the same year levied upon different properties of Robinson. Judgment of default was entered against Robinson in the action October 26, 1910. On November 5, 1910, H. B. Parkin, trustee in bankruptcy for Robinson, one of the other defendants in error, was allowed to intervene in the action, and on the same day filed his complaint in intervention therein. The complaint sets forth, in brief, that on August 27, 1910, an involuntary petition in bankruptcy was filed against Robinson; that on September 16, 1910, he was duly adjudged a bankrupt; that thereafter by order of the court the

cause was referred to W. H. Adams, referee in bankruptcy; that at a regular meeting of the creditors of the bankrupt the intervener was on October 18. 1910, duly appointed trustee of the bankrupt's estate, qualified as such, and entered upon the discharge of his duties; that plaintiff on July 18, 1910, and within four months prior to the filing of the petition in bankruptcy, caused an attachment to be issued and levied upon the property of the bankrupt; that plaintiff now holds such property under such attachment; and that at the time of the levies of attachment and subsequent thereto the defendant Robinson was insolvent and unable to pay his debts, by reason whereof the attachment is null and void. The prayer is for a dissolution of the attachment and an order directing the marshal to turn over the property held under the levy to the trustee. The answer simply denies all the allegations of the complaint excepting such as pertain to the issuance of the writ of attachment and its levy upon the property of Robinson. Under the issues thus formulated a trial was had before a jury. resulting in a verdict and judgment favorable to the intervener and against plaintiff. Further facts necessary to a determination of the controversy are stated in the opinion.

Stevens, Roth & Dignan, Metson, Drew & Mackenzie, and Horatio Alling, for plaintiff in error.

McGowan & Clark, Albert Fink, and Thomas R. White, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The referee in bankruptcy was called in behalf of the trustee and permitted over objections to testify respecting and to give in evidence a "list of debts proved" against the bankrupt's estate. Attending the list is a statement by the referee that:

"The following is a list of creditors who have proved their debts at the first meeting and subsequently."

It simply contains the names of the claimants with the amounts set opposite, and was filed in the District Court January 16, 1911. There is nothing stated in connection with the claims to show the date when they accrued. The aggregate of the list is $14,487.96. To be added to these are the claims of the plaintiff amounting to $10,950, which, according to the showing in that way, make a sum total of indebtedness of the bankrupt of $25,437.96. The claimants themselves or witnesses cognizant of the fact gave evidence respecting all these claims except seven, which aggregate $7,103.61. This sum, deducted from the total claims shown by the list with Cook's claim added, leaves a margin of $18,334.20, and constituted a factor in determining the true aggregate amount of the liabilities of the bankrupt. It is questioned that the list was ever admitted in evidence; but the record shows that it was, and it was finally marked as an exhibit. See Record, p. 336. Now, it is objected that the testimony of Adams respecting the claims contained in the list was by nature hearsay, and therefore incompetent to prove that the liabilities of Robinson existed at a date antecedent to the date of filing such claims, and that the list, Exhibit 10, was itself incompetent to establish the existence of such claims. This constitutes the basis for the first assignment of error.

The second assignment relates to the introduction and admission in evidence over objection of intervener's Exhibit 9, being the inventory and appraisement of the property of Robinson filed by the appraisers November 9, 1910, because it does not tend to prove the fair valuation of Robinson's property on July 18 and August 4, 1910, the date of the levies of the writ of attachment.

The third pertains to the admission over objection of intervener's Exhibit No. 7, being a schedule containing a list of properties and creditors filed by the bankrupt October 18, 1910, for the like reason that it does not tend to prove either the amount of his liabilities or the fair valuation of his property on said July 18 and August 4, 1910, and for the further reason that the schedule constitutes a self-serving declaration.

These assignments, among others, are confidently relied upon as showing cause for reversal of the judgment of the District Court. We have concluded, however, after a very careful study of the record and consideration of the real controversy involved, that they are rendered wholly irrelevant and immaterial by reason of the order or judgment adjudicating Robinson a bankrupt. This judgment of adjudication is preclusive of all these questions. This although the petition of intervention was framed upon the theory that it was essential to show that the bankrupt was insolvent at the date upon which the levies of attachment were made, and although the cause was tried upon that theory.

The plaintiff in error is himself a creditor of Robinson, and it was by reason of that relationship that he was enabled to obtain an attachment against the bankrupt's property. It is provided by the Bankruptcy Act that the bankrupt or any creditor may appear and plead to the petition (for involuntary bankruptcy) within five days after the return day, or within such further time as the court may allow. If neither the bankrupt nor any of his creditors shall so appear and controvert the facts alleged in the petition, then the judge is empowered and directed to determine as soon as may be the issues presented by the pleadings, unless for the question of insolvency or any act of bankruptcy alleged in the petition a jury is demanded. If on the last day within which pleadings may be filed none are filed, the judge is authorized on 'the next day to make the adjudication. Section 18, subds. "a," "b," "c," and "d," and section 19, subd. "a," of the Bankruptcy Act. So far as the record shows, the adjudication was regularly made, and no question has been interposed to the jurisdiction of the District Court to pronounce it.

Five acts of bankruptcy are prescribed by the statute. The third consists in having suffered or permitted while insolvent any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected thereby vacated or discharged such preference; and the fifth in having admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground. A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act. Section 3, subds. "a" and "b."

[1] As it is matter for consideration, we further call attention in this relation to certain clauses of the act respecting liens. By section 67, subd. "c," it is provided that:

"A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act."

And by subdivision "f":

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate."

With these statutes in view, let us examine the petition filed for having Robinson adjudicated a bankrupt. The amended petition was filed September 10, 1910; the original having been filed August 27th previous. The adjudication was made September 16, 1910. Among other things, it sets out that Robinson is insolvent and unable to pay his debts; that within four months prior to the filing of the petition Robinson committed an act of bankruptcy, consisting in the institution by Cook of the action to recover for an indebtedness of $10,000 and interest owing by Robinson to Cook, and the levy of the attachment on July 18, 1910, and August 4, 1910, upon the property of Robinson, and the securing of an injunction by Cook against Robinson restraining the latter from disposing of any of his property, it being alleged in connection therewith that, unless Robinson is adjudicated a bankrupt, Cook will secure a preference over and above all the other creditors whose claims are equal in rank and ahead of those creditors having preferred claims, some of the claims of the latter class being set out.

Then it is further alleged that Robinson had admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground, a copy of which admission accompanies the petition. With relation to this petition it might possibly be objected that the first alleged act of bankruptcy is not well pleaded; in other words, that the facts stated do not constitute an act of bankruptcy as contemplated by the statute, in that it is not shown that a or any sale was made of the property, or that Robinson failed within five days of such sale to vacate or discharge the preference. It is alleged, however, that Robinson is unable to pay his debts. But if it be that the petition is deficient in stating a cause in respect to

the third act of bankruptcy, there can be no question that an act of bankruptcy on the part of Robinson by admitting in writing his inability to pay his debts, etc., has been well pleaded. So that the petition presents the two cardinal issues: Robinson's insolvency, and the commission of an act of bankruptcy. Upon consideration of these he was adjudged a bankrupt. It has been held, under a construction of the Bankruptcy Act by the Supreme Court, that where it is sought to have the debtor adjudged a bankrupt for having made a general assignment for the benefit of his creditors, it was not essential that it be either alleged or proved that the bankrupt was insolvent. West Company v. Lea, 174 U. S. 509, 19 Sup. Ct. 836, 43 L. Ed. 1098. The same deduction may perhaps be predicated of the fifth act of bankruptcy because it is not required by the statute that the debtor shall be insolvent at the time of making his admission in writing of his inability to pay his debts, etc. But, however this may be, the allegation of Robinson's insolvency was essential in view of the attachments pending against his property. It must be further premised that the controversy inaugurated under the present action is wholly collateral to the proceeding in which Robinson was adjudged a bankrupt.

[2] Now, the creditors of the bankrupt became parties to the proceeding to have him so adjudged and are precluded by the order of adjudication in so far at least as the adjudication determines the insolvency of the debtor, and that he has committed an act of bankruptcy within four months of the filing of the petition. In Bear v. Chase, 99 Fed. 920, 924, 40 C. C. A. 182, 186, a case bearing near analogy upon the facts to the case at bar, the Circuit Court of Appeals for the Fourth Circuit expressly held that:

"Upon the adjudication of the bankrupt, all creditors became parties to the bankruptcy proceedings by operation of law, and particularly these creditors by whose acts the bankruptcy was caused."

Here, as there, the person running the attachment is a creditor of the bankrupt, and it was he who through the attachment precipitated the proceeding in bankruptcy. So in Hackney v. Hargreaves Bros., 13 Am. Bankr. Rep. 164, 170, 68 Neb. 624, 99 N. W. 675, which was a contest between a trustee in bankruptcy and one sought to be charged as a creditor having received unlawful preference, the court gave a like rendering of the law, as follows:

"The defendants in the action are not third parties in the sense that they are in no wise connected with the bankruptcy proceedings, because, for the purpose of these controversies, and in determining their liability, they are sought to be charged as creditors of the bankrupt having received unlawful preferences, and for such purposes were necessarily parties to the bankruptcy proceedings."

Being parties to the bankruptcy proceeding, it must follow that the creditors are precluded by the adjudication upon such issues as must necessarily be determined in order to pass judgment; otherwise there would be no end to controversy as to these matters, as every creditor would claim the right to be heard by independent suit.

As was said in Re American Brewing Co., 112 Fed. 752–758, 50 C. C. A. 517, 523:

"If it were necessary, in order to bind creditors by a judgment in bankruptcy, that they should appear and answer, as they always have a right to do, then an adjudication could be prevented simply by creditors abstaining from appearing in the proceedings. But it is well settled that the proceedings are in a large sense in rem, and are binding whether the bankrupt or creditors appear or not."

And it has been held that the adjudication in bankruptcy, until avoided by direct proceeding, is as binding and conclusive upon the bankrupt and the creditors as much so as a judgment inter partes on due hearing in a court of competent jurisdiction. In re Hecox, 164 Fed. 823–825, 90 C. C. A. 627. See, also, In re First National Bank (C. C. A. 8th Ct.) 152 Fed. 64–70, 81 C. C. A. 260, 11 Ann. Cas. 355.

In the case at bar, as we have seen, two of the essentials to be determined in the course of the adjudication were the insolvency of the debtor, and the admission in writing of his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground, and this within four months previous to the filing of the petition. So that the plaintiff in error is precluded by the adjudication to question the insolvency of Robinson at the time of the filing of the petition in bankruptcy, and it does not affect the case that Robinson may not have been insolvent at the time the attachments of Cook were levied. This for the reason that by subdivision "f" of section 67 all attachments levied against a person insolvent at any time within four months prior to the filing of the petition in bankruptcy are deemed null and void, in case the adjudication in bankruptcy is made. The attachment is annulled by force of the adjudication, and the trustee becomes entitled to the property free of the lien or incumbrance thereof.

Subdivision "c" of section 67 declares, in effect, that a lien acquired by attachment shall be dissolved by the adjudication if it appears that such lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference; but it has been determined that subdivision "c" is repugnant to the provisions of subdivision "f" on the same subject, and that the latter provisions should prevail. It was so held in Re Richards by the Circuit Court of Appeals of the Seventh Circuit, 96 Fed. 935, 37 C. C. A. 634. The court there, speaking through Jenkens, C. J., says:

"These two subdivisions, 'c' and 'f,' in our judgment, are plainly antagonistic and irreconcilable. The former saves a lien obtained through legal proceedings begun within four months unless it was obtained and permitted while the debtor was insolvent, or the creditor had reasonable cause to believe such insolvency, or the lien was sought and permitted in fraud of the provisions of the act. The question of the pecuniary condition of the debtor and knowledge upon the part of the creditor are influential in determining the validity of the lien so obtained. But subdivision 'f' is broader in its scope, and avoids all liens obtained through legal proceedings within the time stated against a person who is insolvent, within the meaning of the subdivision, irrespective of knowledge on the part of the creditor of the fact of insolvency, and irrespective of the question whether the obtaining of

the lien was in any way suffered and permitted by the debtor. It avoids all liens obtained through legal proceedings against a person who is insolvent within four months before the filing of the petition."

It is then held that subdivision "f" must control. The history of the legislation is gone into and deemed confirmatory of the conclusion reached. The same construction was given to these subdivisions in Bear v. Chase, supra. Speaking of subdivision "f," section 67, the court says:

"Not only does this section make null and void the levy of the attachments under the circumstances of this case, but it expressly provides that the property affected by the levy shall be wholly discharged and released from the same, and that it shall pass to the trustee as a part of the bankrupt's estate, unless the court, upon due notice, shall order that the right under such lien be preserved for the benefit of such estate. This section is broad and comprehensive in its terms, and too clear to admit of serious controversy. Under it no preference can be acquired by the levy of attachments within four months of the filing of a petition in bankruptcy."

See, also, In re Kenney (D. C.) 97 Fed. 554, 557.

[3] Cook's attachment therefore having been rendered null and void by reason of the adjudication in bankruptcy, it was of no further potency to affect or incumber the property of the bankrupt, and it follows that the inquiry as to the insolvency of the bankrupt at the time the attachment was levied was wholly irrelevant and immaterial. It could in no way affect the inefficacy of the attachment so rendered by the adjudication. So also were the list of claims proved, the inventory and appraisement and the schedules containing the list of properties and creditors of Robinson wholly immaterial and irrelevant for the purpose of showing the insolvency at any time, as the adjudication precluded further inquiry upon the subject, and the admission thereof in evidence could not in any way affect the plaintiff in error to his injury; he being also precluded by the adjudication to further question the insolvency of Robinson at any time within four months previous to such adjudication.

The cases relied upon by the plaintiff in error as authority that the creditors are not parties to the proceeding in bankruptcy and are not precluded by the adjudication are not to the purpose. Cullinane v. State Bank of Waverley, 12 Am. Bankr. Rep. 776, 123 Iowa, 340, 98 N. W. 887, was a case by the trustee to recover an alleged preference obtained by chattel mortgage. The mortgaged property had been sold and the proceeds thereof applied upon the indebtedness of the bankrupt, and the mortgage. By subsequent collections the indebtedness was fully discharged. In re Chappell (D. C.) 113 Fed. 545, was a case of like nature to recover certain partial payments alleged to have been made by way of preference. As it pertained to those preferences, the parties defendant could not be considered parties to the bankruptcy proceedings, and of course would not be bound by the adjudication. But as it is said in Bear v. Chase, supra:

"These attaching creditors do not occupy the relation of third persons in possession of, or adverse claimants dealing with, the property of the bankrupt."

The remaining three assignments of error consist: First, in the alleged erroneous theory adopted by the court respecting the fair valuation of the property; second, remarks of the judge alleged to be prejudicial to the plaintiff in error; and, third, certain alleged miscellaneous and unclassified errors in the admission and rejection of evidence and in the giving and refusing instructions. Like the three assignments just considered, these are likewise rendered immaterial by the adjudication in bankruptcy. In fact, under the conditions prevailing, all that was necessary to the dissolution of the attachment was the mere suggestion on the part of the trustee that the adjudication was had and that the attachment was levied within four months of the adjudication.

These considerations lead to an affirmance of the judgment, and it is so ordered.