### SHEPPARD-STRASSHEIM CO. v. BLACK.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1914.)

#### No. 2010.

1. BANKRUPTCY (§ 165*)—PREFERENCES—CHATTEL MORTGAGE.

Whether a chattel mortgage executed by a bankrupt to a creditor constitutes a voidable preference is mainly, if not entirely, a question of law dependent on the construction and application of Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506), providing what conveyances shall constitute preferences.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

2. BANKRUPTCY (§ 166*)—PREFERENCES—AVOIDANCE—INSOLVENCY.

Where it did not appear that, at the time a bankrupt executed a chattel mortgage on certain of his assets to a creditor, he was insolvent, as required by Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), in order that the mortgage might be void as a preference, and the creditor had no reasonable cause to believe that the enforcement of the mortgage would effect a preference, it was not voidable as such.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

3. BANKRUPTCY (§ 100*) — PREFERENCES — INSOLVENCY — ADJUDICATION — RES JUDICATA.

An adjudication in bankruptcy, though it may be conclusive, as against a chattel mortgage creditor of the bankrupt, that the bankrupt was in fact insolvent when he executed the mortgage, does not determine the chattel mortgagee's right to retain the security.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. § 100.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Archie T. Black, trustee in bankruptcy of the estate of Antonio Marzano, against the Sheppard-Strassheim Company. From a decree of the District Court in favor of plaintiff, defendant appeals. Reversed, with directions to dismiss.

The appellee, as trustee in bankruptcy, filed his bill against the appellant to recover the value of mortgaged chattels, derived from the bankrupt and sold for the benefit of the appellant, under chattel mortgage thereof alleged to be voidable as an unlawful preference in violation of the Bankruptcy Acts; and this appeal is from a decree of the District Court awarding such recovery, on final hearing of the issues and confirmation of a special master's report of testimony and findings.

Henry S. Blum and Isadore Wolfsohn, both of Chicago, Ill., for appellant:

Charles J. Faulkner, Jr., and Walter C. Kirk, both of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge. [1] The questions presented by this appeal are free from controversy as to the ultimate facts in evidence, and the issue, whether the appellant's mortgage in suit constitutes a voidable preference, is mainly, if not entirely, one of law, predicated on the terms of the Bankruptcy Act and the amendment of section 60b thereof (36 Stat. 838, 842) by the Act of June 25, 1910. These are the pertinent and controlling facts as established and reported by the referee as special master, namely:

[2] On July 20, 1911, the bankrupt owned a stock of groceries and conducted a small grocery business, in a building known as No. 146 East 117th street, Chicago; he also occupied, with his wife, an adjacent building known as No. 148, as a homestead. The title to both of these pieces of real estate was then held "in the name of Antonio Marzano" (the bankrupt), "and Anna Marzano, his wife." The bankrupt was indebted to the appellant in the sum of $251.66, for merchandise sold on account past due, and when payment was demanded he requested an extension of time, with an offer of security in a chattel mortgage. He thereupon made and delivered to the appellant a sworn statement of his "financial condition," in substance showing: As assets, "merchandise at cost price," $400; store fixtures, $575; "notes and accounts good," $400; "cash on hand and in bank," $75; horse, buggy, wagon and harness, $265; and the above-mentioned real estate (as owned by himself and wife, with No. 148 named as homestead) of the "market value" of $3,500. As liabilities owing for merchandise, $599; mortgage on above real estate, $1,200. As "amount of assets over liabilities, $3,416." Believing this statement to be true and that the mortgagor was solvent, the appellant accepted and recorded the chattel mortgage in suit, as security for the $251.66. It

was executed July 20, 1911, embraces only the above-mentioned merchandise on hand and store fixtures, and upon foreclosure sale September 11, 1911, the appellant realized therefrom less than the amount of the debt. On September 8, 1911, through threats of violence and intimidation—supposed to proceed from "the so-called 'Black-Hand' organization," in no wise attributable to his financial condition—the bankrupt "and his wife fled, abandoning his store, and no one has known or disclosed his present abode"; and on September 11, 1911, a petition by other creditors was filed for an adjudication of involuntary bankruptcy against him, which alleged that he "owes debts to the amount of $1,000" and "is insolvent," and that he "committed an act of bankruptcy," in giving the above-mentioned mortgage to the appellant, "while insolvent as aforesaid." An adjudication of bankruptcy ensued October 31st, without personal service of process and without joinder of issue.

Other probative facts (not specified in the report) appear from the undisputed testimony of witnesses introduced on behalf of the trustee, as follows: The business of the bankrupt has long been carried on under like conditions, with goods on hand to the amount of $400 or $500, replenished from day to day by purchases from wholesalers, and his sales were sufficient to "turn over about $400 or $500 of stock a week." His credit was good with these houses, although sometimes "slow" in payments; and this method of business was conducted without substantial change, both before and after July 20th, up to his abandonment of business as above mentioned.

Testimony does not appear tending to impeach the correctness of the statement so made to the appellant on July 20th, with the single exception of the valuation there placed upon the real estate. While another item of valuation—$400 for "notes and accounts good"—is mentioned in the report as "valueless," no testimony appears tending to disprove either the existence of such assets or their valuation. In reference to the real estate, it appears from the evidence that the bankrupt and his wife disposed of both parcels when their flight from Chicago was impending—by exchanging them for Wisconsin lands at a nominal valuation of $3,500—and the special master thus states his deductions as to their value: "Evidence disclosed that the real estate has since then been sold for $2,850 on small deferred payments, but that its cash valuation was only $2,500"; that it "was incumbered for $1,200"; that "the bankrupt only owned half" thereof; that "there was a homestead exemption of $1,000 which attached to one of the pieces"; that he "eliminates the real estate as having in substance no equity for the creditors"; and that the appellant should not have "been governed by the valuation put thereon by the bankrupt."

We are not satisfied that this finding of $2,500 as the value of the real estate is either well founded, or in accord with the statutory requirement of "fair valuation"; nor do we understand the evidence to authorize the conclusion that the bankrupt appeared to have no substantial equity therein to be applicable for testing his solvency; and, in any view thereof, the ownership and use of such real estate, as described, would tend to support the claim of bona fides in giving

and taking the security in connection with the uncontroverted show-
ing of personal property valuation in excess of liabilities.

The conclusions of the special master, confirmed by the District
Court, that the mortgage was voidable as a preference, are involved
with various recitals of the evidence and findings therefrom in the
report, but they are stated, in substance, as follows: That "the ques-
tion of law is found in section 60 (b) as amended in 1910," and "the
mortgage was such a transfer" as there declared voidable by the
trustee. That the "bankrupt unquestionably was insolvent as he was
so adjudged—the involuntary petition setting up the execution of
the mortgage and charging insolvency at the time same was executed,
* * * the mortgagor not making any objection." And, in refer-
ence to the further condition provided by the amendment, it is stated,
after reviewing various facts: (1) That it may be assumed from the
testimony that the appellant "and its agents were familiar with the
result to be anticipated in the foreclosure of chattel mortgages"; and
(2) that "I am therefore satisfied from the evidence that not only
was the bankrupt insolvent at the time he gave the mortgage, but that
Sheppard-Strassheim Company had reason to believe that the enforce-
ment of that mortgage by them would produce a condition that would
give them a preference over the other creditors, and I so find."

Whatever may have been the view there adopted of the meaning
of the amendment of section 60b, as mentioned, it appears that its
requirements were ultimately treated as raising an issue of fact, in a
limited sense, for the test of validity, so that the case may be distin-
guishable, in that respect, from the ruling presented on the appeal
(No. 2014) in Kenwood Trust & Savings Bank v. Buell, Trustee, 211
Fed. 638, 128 C. C. A. ——, wherein our opinion is handed down here-
with. It is unquestionable, however, that our ruling in that case is both
applicable and controlling upon the present inquiry, for interpretation
of the amended provision referred to upon which the single issue of fact
involved in the foregoing finding must rest. As there interpreted, the
only "preference" denounced by the several provisions of the Bank-
ruptcy Act and amendments thereof is one given by the bankrupt
when he is in truth insolvent, as defined in section 1 (15) of the act,
so that the common-law right of a debtor to give a preference to one
or more creditors over other creditors, by payment of or security for
indebtedness, is otherwise unaffected by such provisions; and the
amended provision of section 60b, requiring that the person receiving
a preference "shall then have reasonable cause to believe that the
enforcement * * * would effect a preference" to render it void-
able, must be read as intending alone the character of preference in-
hibited by the Bankruptcy Act. Therefore, without evidence tending
to charge the beneficiary with notice (actual or constructive) that the
bankrupt was insolvent when the security was given, the statute does
not authorize a finding of invalidity, although it must necessarily have
been understood as preferential over other creditors in the general or
common-law sense of that term.

We are of opinion, accordingly, that error is well assigned upon
the above-mentioned rulings against the appellant; that the issue of

fact arising under the statute, as above defined, is neither recognized in the finding, nor determined in conformity with the uncontroverted facts in evidence. As appears from the foregoing recital of facts, the statement of the amount and valuation of personal assets on hand, and of the entire indebtedness of the bankrupt, when the mortgage was made, is not only unimpeached, but the testimony tends strongly in support of its verity. It is conceded by the report, as "fair to assume that the bankrupt got together all the money he could before running away," and that "it is possible he may have carried some of his goods away with him, but as to how much it is impossible to say"; and the testimony proves that he was constantly purchasing goods on credit during the ensuing two months. Thus the appearance of personal assets amounting to $1,715 to satisfy debts aggregating $599, in the business carried on as described, may well have satisfied the appellant that he was not insolvent, and authorizes a finding in his favor upon the issue, irrespective of the value of the equity in the real estate above mentioned.

[3] In support of the decree, counsel for appellee contends that the adjudication of bankruptcy is conclusive upon the appellant in the present issue, because the petition therefor alleged insolvency of the bankrupt at the time the mortgage was given; and this view of its effect appears to have been entertained by the special master, as indicated in his report. The ruling of this court in the case of In re American Brewing Co., 112 Fed. 752, 756, 50 C. C. A. 517, is relied upon for such contention; but the issue in the case at bar (as above defined) is distinguishable from the issue described in that opinion, and the question whether the doctrine thereof can be upheld when like issue arises for review does not require solution. We believe it to be free from doubt that the statutory issue upon the right of the appellant to retain his security was neither presented by the petition for adjudication of bankruptcy, nor adjudicated thereunder, and that it was not res adjudicata of such right, however conclusive may have been its effect upon the separate question of insolvency in fact. Hussey v. Richardson-Roberts Dry Goods Co., 148 Fed. 598, 602, 78 C. C. A. 370.

The decree of the District Court is reversed, with direction to dismiss the bill for want of equity.