JOHNSON v. GRATIOT COUNTY STATE BANK.

1. BANKRUPTCY—BANKS AND BANKING—DEPOSITS—PREFERENCES.
   Where the directors of a corporation had indorsed notes
   to several banks and, after finding their corporation was
   hopelessly insolvent, tried to realize on the quick assets to
   pay off the notes, deposits made with this purpose in view
   and to the knowledge of defendant, could not be retained
   and set off by the bank against the insolvent's notes,
   which proceeding would amount to a preference, in vio-
   lation of 30 U. S. Stat. 565, U. S. Comp. Stat. 1913, § 9652.

2. SAME—RES JUDICATA—ACT OF BANKRUPTCY.
   The decision of the referee, confirmed by the court, in a
   bankruptcy proceeding contested by the bankrupt, that the
   same was insolvent and had made preferential payments,
   is conclusive and cannot be collaterally attacked by cred-
   itors of the bankrupt or by his trustee.

3. SAME—RECORD OF PROCEEDINGS—JURY—CHARGE.
   The court did not err in permitting part of the bankruptcy
   proceedings to be read before the jury, later instructing
   them that the subject matter complained about was gov-
   erned by the record and it could not be taken into con-
   sideration except as the court advised them.

4. SAME—SCHEDULES—PREFERENCE—EVIDENCE.
   Evidence that the assets of the bankrupt had been ma-
   terially reduced by damage caused by a cyclone a few
   months before the adjudication of bankruptcy was prop-
   erly excluded by the court, as the question of solvency
   was foreclosed by the judgment in bankruptcy, and the
   trial court so ruled.

Error to Gratiot; Searl, J. Submitted April 20,
1916. (Docket No. 76.) Decided December 21, 1916.

Assumpsit by D. Lloyd Johnson, trustee in bank-
ruptcy of the St. Louis Chemical Company, against
the Gratiot County State Bank for money had and re-
ceived. Judgment for plaintiff. Defendant brings
error. Affirmed.

*George P. Stone* and *L. B. McArthur,* for appellant.

*Lyon & Moinet (William A. Bahlke,* of counsel), for appellee.

BIRD, J.   A petition was filed in the Federal court on the 25th day of June, 1909, against the St. Louis Chemical Company, by certain of its creditors, praying to have it adjudged a bankrupt.   Subsequently the company was adjudged a bankrupt and a trustee appointed.   The company became indebted to defendant bank on a promissory note for $5,000, in July, 1907, and the same was renewed from time to time until February 5, 1909, when the company commenced to make payments thereon.   From that date up to March 31, 1909, it made several payments aggregating $4,-300.   It is to recover this sum that the trustee filed this suit, it being his claim that the payments were made within four months of the bankruptcy proceedings and while the company was insolvent.

1. The principal error relied upon by the bank was the court's refusal to instruct the jury that under the proofs defendant had a right to set off the amount due on its note against the chemical company's deposit.

It was the claim of defendant that deposits were made by the company in its bank from time to time, in the usual course of business, and that by reason thereof the relation of debtor and creditor existed, and that after the note became due it had a lawful right under the law to set it off against the deposit, and it is contended that the bankruptcy laws, in express terms, authorize this to be done.   The particular section referred to is section 68a of the bankruptcy law (30 U. S. Stat. 565, U. S. Comp. Stat. 1913, § 9652), and it provides in part that:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off

against the other, and the balance only shall be allowed or paid."

Plaintiff, in answer to this contention, concedes that, if the relation existing between defendant and the company had been the ordinary relation existing between banker and depositor, its conclusion would be sound. But it is the contention of plaintiff that the deposits made in defendant bank and the checks drawn thereon in payment of defendant's note were done in pursuance of a fraudulent scheme on the part of the directors of the company, after they knew the company was insolvent, to convert its quick assets into money and pay off, before the crash came, certain notes, including the one in question, which had been indorsed by two of the directors of the company; that the carrying out of this scheme within four months from the date of the bankruptcy proceedings, and while the company was insolvent, created an unlawful preference in behalf of the bank and was in fraud of its other creditors. It was further claimed that the defendant had notice that the company was insolvent and had knowledge of the unlawful scheme when the payments were made.

If it can be said that these claims were supported by competent proof, the trial court was justified in disposing of the matter as he did. The jury were instructed in part that:

"Now, when the money was placed in the bank, the bank would owe the money to the chemical company. The chemical company owed a note to the bank. If the bank received this money in good faith and without knowledge, such knowledge as I have defined to you in my charge here, of the fraudulent intent upon the part of the chemical company, then it would have the right to offset its note against the money so deposited, and, if the payments were received by the checks for the purpose of making payments upon the note, the bank, under those circumstances, could keep

the money.   But if it had notice or knowledge, or if
in the exercise of bad faith it abstained from learning
those things, when it might, by the exercise of rea-
sonable diligence, and would have learned the fact that
the money was placed there in pursuance of that plan
of the chemical company to pay off certain of its di-
rectors and those who were indorsers upon its paper,
then the bank could not keep the money and could not
offset it against this note, and would have to pay it
back to the trustee and receive its distributive share
along with the other directors when it proved its
claim."

The testimony tended to show that the directors
were indorsers on notes to several banks, and, when it
became obvious that the company could not weather
the storm, they arranged to realize on the quick assets
of the company and pay off these notes, and that dur-
ing the time they were making these payments the
company was insolvent.  Testimony was admitted tend-
ing to show that notice of these facts was brought
home to the defendant.  If the jury believed this testi-
mony, the defendant was not entitled to retain the
payments because they were received in violation of
the provision of the bankruptcy law against prefer-
ences.   Section 60*b* of the bankruptcy law.

2. But it is strenuously insisted that there was no
competent evidence to establish the fact that the com-
pany was insolvent for four months prior to the date of
the filing of the petition, and that the directors had
knowledge of it.   To establish these facts the bank-
ruptcy proceedings were received in evidence.   The pe-
tition charged that the company was insolvent and had
been for four months prior thereto, and that it had cre-
ated preferences in behalf of certain of its creditors, by
making payments on the notes heretofore referred to,
including the one in question.   The sworn answer de-
nied these allegations.   A hearing was had.   The ref-
eree found the allegations to be established, and the

district court later confirmed the finding. The trial court held, and so charged the jury, that the bankruptcy proceedings were conclusive as to those facts.

Defendant insists that the adjudication settled nothing beyond the fact of insolvency of the company at the date of the filing of the petition. The rule appears to be otherwise where the proceedings are involuntary and are contested. In such cases the finding of the referee, when confirmed by the court, is final and conclusive in any collateral inquiry and is binding on the creditors whether they appear or not. This appears to be placed upon the ground that the proceedings are in a sense *in rem*, and the law makes all creditors parties to the proceeding. *Bear* v. *Chase*, 99 Fed. 920 (40 C. C. A. 182) ; *In re American Brewing Co.*, 112 Fed. 752 (50 C. C. A. 517) ; *Hackney* v. *Raymond Bros.-Clarke Co.*, 68 Neb. 633 (99 N. W. 675) ; *In re Hecox*, 164 Fed. 823 (90 C. C. A. 627) ; *Cook* v. *Robinson*, 194 Fed. 785 (114 C. C. A. 505).

In the last-named case it was said:

"Now, the creditors of the bankrupt became parties to the proceeding to have him so adjudged and are precluded by the order of adjudication in so far at least as the adjudication determines the insolvency of the debtor, and that he has committed an act of bankruptcy within four months of the filing of the petition. In *Bear* v. *Chase*, 99 Fed. 920, 924 (40 C. C. A. 182, 186), a case bearing near analogy upon the facts to the case at bar, the circuit court of appeals for the fourth circuit expressly held that:

" 'Upon the adjudication of the bankrupt, all creditors became parties to the bankruptcy proceedings by operation of law, and particularly these creditors by whose acts the bankruptcy was caused.'

"Here, as there, the person running the attachment is a creditor of the bankrupt, and it was he who through the attachment precipitated the proceeding in bankruptcy. So in *Hackney* v. *Raymond Bros.-Clarke Co.*, 13 Am. Bankr. Rep. 164, 170 (68 Neb. 633, 99 N.

W. 675), which was a contest between a trustee in bankruptcy and one sought to be charged as a creditor having received unlawful preference, the court gave a like rendering of the law, as follows:

"'The defendants in the action are not third parties in the sense that they are in no wise connected with the bankruptcy proceedings, because, for the purpose of these controversies, and in determining their liability, they are sought to be charged as creditors of the bankrupt having received unlawful preferences, and for such purposes were necessarily parties to the bankruptcy proceedings.'"

Again in *Re Hecox, supra,* the court observed that:

"The radical error in the ruling of the district court and the vice in the position assumed by counsel for the receiver before this court consist in undertaking collaterally to controvert the ground of adjudication in bankruptcy. That adjudication determined that the bankrupt was insolvent and while insolvent, within four months of the filing of the petition in involuntary bankruptcy, and because of its insolvency, a receiver had been put in charge of its property by order of the State court. By the amendment to the bankrupt act of July 1, 1898 (30 U. S. Stat. chap. 541, § 3*a* [4]), by Act Feb. 5, 1903 (32 U. S. Stat. chap. 487, § 2), it is declared to be an act of bankruptcy 'because of insolvency a receiver or trustee has been put in charge of his property under the laws of a State, of a territory, or of the United States.' Until avoided in a direct proceeding therefor, that adjudication was binding and conclusive on the bankrupt and creditors, as much so as a judgment, *inter partes,* on due hearing in a court of competent jurisdiction. *In re American Brewing Company,* 112 Fed. 752 (50 C. C. A. 517); *In re Knight,* 125 Fed. 35; *In re First Nat. Bank,* 152 Fed. 65 (81 C. C. A. 260, 11 Am. & Eng. Ann. Cas. 355)."

We think the weight of authority sustains the contention of plaintiff's counsel and the position of the court that the bankruptcy proceedings were conclusive in these proceedings upon the questions of the insolvency of the company on the date of filing its

petition and for four months prior thereto, and that the directors had knowledge thereof.

3. The plaintiff was permitted against objection to read the bankruptcy proceedings in the presence of the jury. It is contended that this was harmful to defendant on the issue which was submitted to the jury. The bankruptcy proceedings were admissible to furnish a basis for the charge of the court that on the day of the filing of the petition the company was insolvent and had been so for four months prior thereto, and that the directors had knowledge thereof. These were material things for the plaintiff to show. We do not, however, see what necessity there was for reading them into the record in the presence of the jury. If it resulted in any harm to defendant's case, we think it was cured by the following explanation of the court:

"Certain issues of this case that the court was obliged to receive testimony upon, and a large amount of documentary testimony of what took place in the United States court, was offered and received by the court, but now at the conclusion of the case I determine some of those questions for you, and you need not consider any of the documentary evidence so far as it came from the United States court except as I shall permit you to do so later on in this charge."

4. After the schedules annexed to the petition had been received in evidence showing the assets of the company, the defendant offered testimony tending to show that the assets were materially reduced as the result of a cyclone which passed over the company's plant a few months prior to the adjudication. The court rejected this testimony on the ground that the insolvency of the company was foreclosed by the bankruptcy proceedings. Counsel bases his argument on the assumption that the schedules were admitted on the question of solvency. In this he is in error, as counsel for plaintiff stated at the time that they were

not offered on the question of solvency, as it was his contention that that question was determined conclusively by the bankruptcy proceedings.

The case seems to have been properly submitted to the jury, and their finding is supported by the testimony.

We are of the opinion that the judgment should be affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.