### In re SOUTHERN ARIZONA SMELTING CO. *

MARTIN v. FREEMAN.

(Circuit Court of Appeals, Ninth Circuit.   March 20, 1916.)

No. 2697.

1. BANKRUPTCY ⊜51—ADJUDICATION—VOLUNTARY BANKRUPTCY—"BANKRUPT"—"PERSON."

Bankruptcy Act July 1, 1898, c. 541, § 1 (1), 30 Stat. 544 (Comp. St. 1913, § 9585), defines a "person" against whom a petition has been filed as including a person who has filed a voluntary petition, and declares (4) that the term "bankrupt" shall include a person against whom an involuntary petition has been filed or who has filed a voluntary petition or who has been adjudged a bankrupt, and (19) that the term "persons" shall include corporations. Section 3 (5) declares that for one to admit in writing his inability to pay his debts and willingness to be adjudged a bankrupt constitutes an act of bankruptcy. A corporation filed a voluntary petition in bankruptcy reciting its inability to pay its indebtedness and that it had exhausted its ability to borrow money to procure funds for the care and preservation of its property and declared its willingness to be adjudged a bankrupt and surrender its property for the benefit of creditors. Held that, as the filing of the petition constituted an act of bankruptcy, a creditor could not, though a question of jurisdiction may be always inquired into, attack an adjudication of bankruptcy on the ground that the corporation was not actually insolvent; for, unless a dismissal of the petition is sought, the averments of insolvency are not issuable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 49; Dec. Dig. ⊜51.

For other definitions, see Words and Phrases, First and Second Series, Bankrupt, Person.]

2. BANKRUPTCY ⊜51—ADJUDICATION—TIME FOR MAKING.

Under Bankruptcy Act, § 59a (section 9643), declaring that any qualified person may file a petition to be adjudged a voluntary bankrupt, the court may, immediately upon the filing of a voluntary petition, adjudicate the petitioner a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 49; Dec. Dig. ⊜51.]

3. BANKRUPTCY ⊜200(3)—LIENS—VOLUNTARY BANKRUPTCY.

Where, within four months after the property of a corporation was attached, it was adjudged a bankrupt on its voluntary petition, the lien of

the attaching creditors is vacated; Bankruptcy Act, § 67f (section 9651), declaring that all levies, judgments, or attachments obtained against an insolvent at any time within four months prior to the filing of a petition in bankruptcy shall be null and void.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 296–300; Dec. Dig. ☞200(3).]

4. BANKRUPTCY ☞199—ACTIONS—EVIDENCE.

Where an attachment lien was rendered ineffective as an incumbrance on adjudication of bankruptcy, inquiry as to the bankrupt's insolvency at the time the attachment was levied is immaterial.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞199.]

Petition to Revise in Matter of Law an Order of the District Court of the United States for the District of Arizona; Wm. H. Sawtelle, Judge.

In the matter of the bankruptcy of the Southern Arizona Smelting Company, a corporation. Petition by M. P. Freeman, as trustee of the estate of the bankrupt, against John H. Martin, as trustee of the estate of the Imperial Copper Company, a corporation, bankrupt. There was an order in favor of petitioner, and John H. Martin petitions for revision. Order affirmed.

Francis M. Hartman and Edwin F. Jones, both of Tucson, Ariz., for petitioner.

Ellinwood & Ross, of Bisbee, Ariz., and Selim M. Franklin, of Tucson, Ariz., for respondent.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge. John H. Martin, as trustee in bankruptcy of the Imperial Copper Company, a corporation, bankrupt, asks review of an order of the District Court for the District of Arizona made in the matter of the Southern Arizona Smelting Company, a corporation, bankrupt.

The Imperial Copper Company was adjudged a bankrupt upon an involuntary petition on July 25, 1911. Upon August 21, 1911, M. P. Freeman was elected trustee in bankruptcy of the Imperial Copper Company; but about July 2, 1914, he resigned, and Martin, the petitioner herein, was elected to succeed him. When the Imperial Copper Company was adjudged a bankrupt, it was a creditor of the Southern Arizona Smelting Company in the sum of $28,887.71. On January 23, 1912, Freeman, as trustee of the copper company, brought action in the territorial court in Arizona against the Southern Arizona Smelting Company to recover upon this debt. About June 17, 1914, upon application of certain creditors of the copper company, the District Court directed that the trustee should cause an attachment to issue in the action then pending before it, and that a levy should be made upon the property of the smelting company. Thereafter, on September 29, 1914, and within four months of the date of the levy of the attachment referred to, the Southern Arizona Smelting Company filed its voluntary petition in bankruptcy in the United States District Court for the District of Arizona, and upon the same day was adjudicated a bankrupt; and on October 31, 1914, M. P. Free-

man was elected as trustee in bankruptcy of the smelting company. Thereafter, about March 18, 1915, Freeman as trustee in bankruptcy of the smelting company petitioned the United States District Court for an order to show cause, directed against Martin as trustee of the Imperial Copper Company, why the attachment lien heretofore referred to should not be held to be null and void, and why injunction should not issue enjoining Martin as trustee from further prosecuting such attachment proceeding, and alleging in the petition, among other things, that at the time of the levy of the writ of attachment the Southern Arizona Smelting Company was, and at all times since had been, insolvent. Martin, as trustee in bankruptcy of the Imperial Copper Company, answered the petition of Freeman and denied that the Arizona Smelting Company was insolvent at the time of the levy of the attachment or at the time of the filing of the voluntary petition in bankruptcy by the smelting company, or at any time, and alleged, among other things, that at the time of the levy of the writ of attachment and of the filing of the voluntary petition in bankruptcy and at all times the smelting company was solvent with ample property to pay its debts; that many of the alleged debts due by the Arizona Smelting Company were not legal and could not be proved or allowed in the bankruptcy proceedings. He prayed that the court would hear evidence upon the question of the insolvency of the Arizona Smelting Company at the time of the levy of the attachment and of the filing of the petition in voluntary bankruptcy. The court ruled that the attachment was null, and that the property affected thereby should be released, and restrained Martin as trustee of the Imperial Copper Company, bankrupt, from prosecuting the action to recover the debt in the state court.

[1] The substance of the assignments of error is: That the court ought not to have held that the adjudication of bankruptcy of the Arizona Smelting Company upon the voluntary petition filed by it within four months of the levy of the writ of attachment dissolved the attachment lien without regard to the question of solvency or insolvency at the time of the levy of the attachment or at the time the adjudication in bankruptcy was made.

Petitioner, through his counsel, concedes that if an involuntary petition in bankruptcy had been filed against the Arizona Smelting Company within four months from the time of the levy of the writ of attachment, and that if the attaching creditor, the trustee of the Imperial Copper Company, had not appeared in the bankruptcy proceedings and resisted the adjudication, such adjudication would have been res adjudicata against petitioner as to the insolvency of the smelting company. But he asks the court to distinguish between the consequences of such a concession and those to follow in this case, because, here, the bankruptcy adjudication was had upon a voluntary petition, without notice to petitioner or other creditors.

Section 1 of the Bankruptcy Act of 1898 explicitly gives us the definitions of words and phrases used in the act which control. Among them are these:

"(1) 'A person against whom a petition has been filed' shall include a person who has filed a voluntary petition; * * * (4) 'bankrupt' shall include

a person against whom an involuntary petition * * * has been filed, or who has filed a voluntary petition, or who has been adjudged a bankrupt; (19) 'persons' shall include corporations, except where otherwise specified."

Section 3, providing what shall constitute acts of bankruptcy, includes as an act having:

"(5) Admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground."

The act of bankruptcy upon which voluntary bankruptcy is based is the written admission contained in the petition itself that the petitioner is unable to pay its debts and is willing to be adjudged a bankrupt on that ground.

The averments of the petition establish those facts so far as a decree of bankruptcy is concerned, and the corporation has committed an act of bankruptcy in filing the petition. These facts are not issuable, nor is notice necessary unless dismissal is sought. Hanover National Bank v. Moyses, 186 U. S. 181, 22 Sup. Ct. 857, 46 L. Ed. 1113. In that case Chief Justice Fuller quoted Judge Lowell, in Re Fowler, 1 Low. 161, Fed. Cas. No. 4,998, holding that the voluntary petitioner might be in fact fraudulent and able and unwilling to pay his debts, but that the law "takes him at his word and makes effectual provision, not only by civil but even by criminal process to effectuate his alleged intent of giving up all his property." Jurisdiction may always be inquired into, but adjudication usually follows as matter of course and brings the bankrupt's property into the custody of the court; it is only after adjudication that the law requires that notice be given by publication and by mail of the first meeting of creditors and of each of the various subsequent steps in administration.

The petition of the Arizona Smelting Company to be adjudged a bankrupt, upon which adjudication was had, sets forth in full the resolution of the board of directors reciting that their company was then largely indebted and wholly unable to pay any of its indebtedness, all of which was long overdue, that it was involved in litigation and without funds with which to pay the necessary expense thereof, that it had "exhausted its ability to borrow money to procure funds for the care and preservation of its property," and declared that it was willing to be adjudged a bankrupt under the laws of the United States, and to surrender all of its property for the benefit of its creditors.

[2, 3] We regard the averments of the petition as clearly showing commercial insolvency, and under section 59a of the Bankruptcy Act the court had authority to act upon the petition as soon as it was filed and to make the adjudication. In re Guanacevi Tunnel Co., 201 Fed. 317, 119 C. C. A. 554. This being so, what was the effect of the petition and adjudication upon the lien acquired by the attachment of the property of the smelting company within four months prior to the filing of the petition? By section 67f of the Bankruptcy Act it is provided that all levies, attachments or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt,

and the property affected by the levy, attachment, or other lien shall be wholly discharged and released from the same and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall order that the right under such levy or attachment or other lien shall be preserved for the benefit of the estate.

The Supreme Court, in First Nat. Bank v. Staake, 202 U. S. 141, 26 Sup. Ct. 580, 50 L. Ed. 967, holding that attachments were annulled by the filing of a petition in bankruptcy within four months after the attachments were levied, said that to what extent liens obtained by prior judicial proceedings should be recognized was a matter wholly within the discretion of Congress. That was not a voluntary bankruptcy, but in giving the meaning of section 67 of the act no distinctions were made between the attitude of one adjudged a bankrupt in involuntary proceedings and one who voluntarily seeks adjudication. We think there should be none when it is kept in mind that it was the intention of Congress to prevent creditors of a bankrupt from gaining preferences over other creditors through legal proceedings had within four months prior to the filing of the petition. As held by the court in Re Kenney, 105 Fed. 897, 45 C. C. A. 113, the property of the bankrupt is "safeguarded" against all such proceedings. Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122. This purpose might often not be carried out if the debtor could by voluntary proceedings legalize transactions which would be nullified upon involuntary proceedings. Strong confirmation of the view that one who has filed a voluntary petition is in no better position than one who is declared a bankrupt involuntarily is found in the provisions of the first section of the act, heretofore quoted, that " 'a person against whom a petition has been filed' shall include a person who has filed a voluntary petition." The Court of Appeals of the Seventh Circuit, in Richard's Case, 96 Fed. 935, 37 C. C. A. 634, had the question here involved under examination and construed section 67f as applicable to all cases where a voluntary petition is filed where such provisions are pertinent. Judge Brown, in Re Vaughan (D. C.) 97 Fed. 560, also ruled to like effect, and well reasoned that the relation of the execution creditor to other creditors, to the bankrupt, and to his estate, is the same where levy is made in voluntary as in involuntary proceedings, and that the preference obtained by the creditor if the levy is not annulled operates to the harm of other creditors and so violates the policy of the act just as much in the one instance as in the other.

[4] In the case of Stone-Ordean-Wells Co. v. Mark, 227 Fed. 975, —— C. C. A. ——, decided since the cases above cited, the Court of Appeals of the Eighth Circuit has held that as the statute 67f, supra, only avoids liens obtained against an insolvent, the insolvency of the person at the time the lien is acquired is an indispensable condition of the existence and of the exercise of the power to avoid in summary proceedings one of the liens specified. That was a case of involuntary bankruptcy. However, for reasons already indicated, under such a state of facts as is here presented there appears to be no substantial reason for construing the statute as distinguishing between voluntary and involuntary proceedings. We therefore believe that by

filing the petition and by the adjudication in bankruptcy the lien of the attachment levied within four months prior to the adjudication upon the property of the smelting company was by operation of law dissolved, and that the rule established by this court in Cook v. Robinson, 194 Fed. 785, 114 C. C. A. 505, is sound. It follows that, as was there held, the lien being ineffective as an incumbrance upon the property of the bankrupt, inquiry as to the insolvency of the bankrupt at the time the attachment was levied was wholly irrelevant and immaterial. Collier on Bankruptcy, p. 96 et seq.

The order of the District Court is affirmed.