## In re FOX WEST COAST THEATRES.

District Court, S. D. California, Central Division.
April 27, 1936.

Walter K. Tuller, Pierce Works, Hom-
er I. Mitchell, and W. B. Carman, Jr., aℕ

of Los Angeles, Cal., for Charles P. Skouras, Charles C. Irwin, O'Melveny, Tuller & Myers, and Reuben G. Hunt.

William H. Neblett and R. Dean Warner, both of Los Angeles, Cal., for petitioners T. L. Tally and Corbar Corporation.

Oscar Lawler, of Los Angeles, Cal., Alfred Sutro, of San Francisco, Cal., and Alfred Wright, of Los Angeles, Cal., for National Theatres Corporation and Twentieth Century-Fox Film Corporation.

John B. Bertero, of Los Angeles, Cal., for Fox West Coast Theatres and Fox West Theatres Corporation.

P. N. McCloskey, of Los Angeles, Cal., for Samuel W. McNabb.

Walter H. Moses, of Los Angeles, Cal., for Earl E. Moss.

JAMES ALGER FEE, District Judge.

The Fox West Coast Theatres, a corporation, was upon voluntary petition filed February 27, 1933 adjudicated a bankrupt. Upon the day following the filing of the petition and prior to the adjudication, a receiver was appointed and after the adjudication the case was referred to the Hon. Samuel W. McNabb, one of the referees in bankruptcy. The cause proceeded through regular course of administration and after the claim of the Wesco Corporation, the sole stockholder and principal creditor of the bankrupt corporation, had been considerably reduced, the property was sold at a private sale to it for the sum of Fifteen Million, Four Hundred Forty Three Thousand, Eighty Eight Dollars and Sixteen ($15,443,088.16) Cents. This sale was confirmed by the Referee, November 22, 1934. The court upon review, sustained this order December 17, 1934. Of this sum Eight Hundred Thirty Three Thousand, Nine Hundred Forty Nine Dollars and Fifty Three ($833,949.-53) Cents was paid in cash and the balance by the cancellation of the indebtedness to the Wesco Company. Following the assumption by the purchasers of the claim of the Government for taxes on property so transferred and the entry of a stipulation that the Wesco Company would hold the property in part for a period of two years in order to protect the trustees of the bankrupt corporation from personal liability, the estate was declared fully administered and closed in regular course on September 18, 1935. Thereafter and upon the fifth day of December, 1935, T. J. Tally and the Corbar Corporation, each alleging that as holder of a lease of different properties to the bankrupt which in each instance had been disaffirmed by the trustees to the damage of the petitioner joined in a petition to set aside the adjudication. This petition was amended upon December 28th by expansion, to include certain matters questioning the jurisdiction of the court. This amendment will be treated as a portion of the original. The petitioners pray the adjudication be set aside; that the court appoint a receiver for the bankrupt and its subsidiaries; that the Chase National Bank, Wesco Corporation and National Theatres Corporation pay into the court such sum as the court may fix as damages up to Twenty Five Million ($25,000,-000) Dollars and render judgment against the bankrupt, its attorneys, two of the three trustees, Charles C. Irwin and Samuel W. McNabb, for the amount paid to them as fees and expenses of administration with interest "and be required to pay to the receiver the entire amount of the claimed indebtedness at the time of the bankruptcy"; that all interest on the disaffirmed leases be paid to date in accordance with original obligation; that attorneys' fees be allowed to petitioner; and that summons issue to Fox West Coast Theatres, Fox West Coast Theatres Corporation, Wesco Corporation, National Theatres Corporation, Fox Film Corporation, Chase National Bank of New York, O'Melveny Tuller & Myers, Reuben G. Hunt, Charles P. Skouras, Charles C. Irwin, and Samuel W. McNabb. The allegations of the petition as amended review the adjudication on voluntary petition of Fox West Coast Theatres, a California Corporation, and on information and belief set up charges of fraud upon the court which are outlined in the following paragraphs.

Wesco Corporation, a Delaware Corporation, owned all the stock of bankrupt. All the stock of Wesco Corporation was owned by Fox Film Corporation, a Delaware Corporation. The Chase National Bank of the City of New York, owned or controlled the majority of the stock of the Fox Film Corporation. The gist of the complaint is that these corporations were in effect a single entity and conspired as such to perpetrate the fraud set up in the petition and that "they used in consummation of the fraud the fiction of corporate entity which they manipulated so that they concealed from the court their true rela-

tion to each other and thereby practiced extrinsic fraud upon the court in bankruptcy proceedings". As a result of the conspiracy the leases of petitioners held by the bankrupt were disaffirmed with hundreds of others. The purpose of the conspiracy by the three corporations named, was "to simulate fictitious debts of bankrupt and so that it could be put through bankruptcy" winding up with its property owned by this related family group of corporations discharged of these obligations, "all of which was concealed from the court at the time of the adjudication". It is charged that certain overt acts were done pursuant to the conspiracy. These steps are summarized below.

The Board of Directors of the bankrupt met upon December 26, 1930 and declared a dividend of Eight Million ($8,-000,000) Dollars which was a withdrawal and a reduction of the capital stock of the bankrupt, a California Corporation, prohibited by the California laws, and this action was taken upon direction of the Wesco Corporation. This dividend was never paid although false entries have been made upon the books of the bankrupt as an asset of Eight Million, Five Hundred Five Thousand, One Hundred Eighty Two Dollars and Eleven ($8,505,-182.11) Cents. The illegal dividend was more than half of the proved and allowed claims and even constituted over fifty percent (50%) of the bid that was made and accepted by the family holding companies to reacquire the property of their subsidiary which they had thrown into bankruptcy. In violation of certain sections of the law of California, fraudulent transfer was made of all assets of the bankrupt which it was not desired to subject to administration in the bankruptcy court, but that bankrupt retained leases from petitioners to bankrupt and such others as it was desired to have disaffirmed in the bankruptcy proceedings. Such transfer was made without consideration. It was concealed from the court that Wesco Corporation was the sole stockholder of the bankrupt. Appraisers were appointed upon petition of the trustees, who in turn had been elected by the conspirators, who had been elected by the holding corporation voting their fictitious claims. These appraisers appraised the property of the bankrupt at slightly over Twelve Million ($12,000,000) Dollars, whereas claims were approved and allowed in the sum of over Fifteen Million

($15,000,000) Dollars, which amount National Theatres Corporation, formerly Wesco Corporation, bid at private sale and paid by giving a receipt to the trustees for the amount of Fourteen Million, Six Hundred Ten Thousand, Nine Hundred Six Dollars and Fourteen ($14,610,906.14) Cents. The only cash paid was Eight Hundred Thirty Three Thousand, Nine Hundred Forty Nine Dollars and Fifty Three ($833,949.53) Cents, of that sum Six Hundred Thirty Eight Thousand, Seven Hundred Fifty Seven Thousand Dollars and Seventy Eight ($638,757.78) Cents was the cost of the administration, leaving a balance of One Hundred Ninety Five Thousand, One Hundred Ninety Nine Dollars and Seventy Five ($195,199.75) Cents. It is asserted that Wesco Corporation wound up owning the business of the bankrupt which it acquired without cost through the aid of the bankruptcy court and with an increased net earning power over that it had enjoyed prior to bankruptcy of Two Million, Seven Hundred Fifty Thousand ($2,750,000) Dollars per year. The referee in bankruptcy was prevailed upon by the holding companies to accept Seventy Five Thousand ($75,000) Dollars when he would have been entitled to One Hundred Fifty Four Thousand, Four Hundred Thirty Three Dollars and Eighty Eight ($154,433.88) Cents if "the bid had been an honest one". Concealment of all these facts from the court is alleged.

All the records and files in the bankrupt are designated as a part of the petition. Certain allegations tending to show that the court did not have jurisdiction to enter an adjudication or close the estate are hereafter succinctly stated. Albert W. Leeds, a son-in-law of the Hon. W. P. James, was a director and secretary of the bankrupt, devoting his entire time thereto and that on the same day that the resolution was adopted, throwing the corporation into voluntary bankruptcy, Leeds colorably resigned and his resignation was accepted but he remained in the same position throughout the bankruptcy at the same salary and with the exercise of similar authority and that this resignation was collusive and intended to conceal from the interested parties the connection of Leeds with bankrupt. Leeds was, at the time of the filing of the petition, one of the managing officers of the reorganized company, Fox West Coast Theatres Corporation,

which received from the bankrupt a fraudulent transfer of its valuable property, above mentioned. Judge James signed the order appointing the receivers and attorneys two days after Leeds had filed the purported resignation, and that on the following day, Judge James signed the order of adjudication. As to Samuel W. McNabb, it is stated that the conspirators selected him for appointment as referee. Later in the record it is shown that by order of January 18th, 1933, McNabb was designated by an order signed by the four Judges of the United States District Court, as a referee, the appointment to be effective March 1, 1933, and upon February 25th, Judge James directed that all bankrupt petitions filed during the month of March 1933 be referred to him; that the bankrupt's petition was filed upon the 27th day of February, 1933, and that McNabb resigned upon the following day, February 28, 1933. He was sworn in March 1, 1933; and the portion of the printed form which assigns a case to a referee, was stricken out in ink and the cause was thus held until McNabb could qualify. After his qualifications on March 1, 1933, a specific order was made referring the case to him which was unusual procedure. It is further alleged that Mr. Moss, a regular referee of the court, on November 22, 1934, sitting in the absence of McNabb, made an order confirming the sale of the properties of the bankrupt and that thereupon the petition to revise was filed which came up before Judge Cosgrave, who confirmed the order without any knowledge of any of the things alleged in the petition, all of which was concealed from him by the conspirators. It is stated that there was a contract between the four referees of the district including McNabb to pool and divide equally all of the fees obtained from bankruptcies administered, and that by the judicial act of Moss in confirming the sale, he obtained one fourth of Seventy Five Thousand ($75,000.00) Dollars.

Citations were issued to the persons and corporations designated by the petitioners. Answers were filed later by all except Judge James and referee McNabb, who each presented affidavits. The answers denied all charges of fraud and collusion but admitted that the dividend alleged was declared by bankrupt at the suggestion of the Wesco Company and that Fox West Coast Theatres Corporation was organized at a date before the adjudication of bankruptcy and that there was transferred to it also, the property and leases of the bankrupt with exception of certain property which it was thought might prove burdensome to the estate including the leaseholds from Tally and the Corbar Corporation which two leases, among others, were rejected by the referee as burdensome to the estate. It is admitted that this transfer was without consideration except that all of the stock of the new company was issued to the bankrupt. The affidavits of the Judge and the referee likewise set forth, that these officers had no connection with the purpose of the alleged conspirators, and that all acts done by each of them were in accordance with the law and based upon the facts as presented to each of them. Motions were filed against certain of the allegations of the answers by petitioners.

The court took the view that the filing of the petitions raised questions of law and specifically required inquiry into the jurisdiction to entertain a motion to set aside an adjudication in bankruptcy on a voluntary petition, after the estate had been administered and an order of closure entered. The cause was therefore set for hearing under Equity Rule 29, 28 U.S.C. A. following section 723, in accordance with the procedure approved by the United States Supreme Court. Royal Indemnity Company v. American Bond Company, 289 U.S. 165, 167, 53 S.Ct. 551, 77 L.Ed. 1100. Since neither party desired to raise the question of jurisdiction and since the petitions attached by reference all of the records in the bankruptcy case, the arguments covered the sufficiency of the petitions in the light of the previous proceedings. It is incumbent upon the court, however, to make certain of jurisdiction, irrespective of the wishes of the contending parties. Mitchell, Insurance Commissioner of California v. Maurer, 293 U.S. 237, 244, 55 S. Ct. 162, 79 L.Ed. 338.

The present authority of this court to act, depends upon several considerations. If this court had no power to grant the order of adjudication, the entry must be erased. If this original order was valid and the estate remained open, the way would be clear to dispose of the cause upon consideration of the equities in accordance with the method adopted in McDonough v. Owl Drug Co., 9 Cir., 75 F.2d 45, 53. If, on the other hand, the estate were closed by a valid order, the court would

determine whether Congress has granted the power to reopen a closed estate because of the matters set up in the petitions. Decision will be made upon these questions in this order.

The course may be platted with more precision by reference to some clearly defined points. If the primary order of adjudication was a nullity, it must be expunged. The obliteration of this foundation would cause the collapse of everything based thereon. Consideration of the equities or the confusion or the momentous consequences which might follow would be improper in such a contingency. Furthermore, the character of the interest of Tally and the Corbar Corporation as creditors or otherwise in the estate could not prevent the denoument. The suggestion of lack of jurisdiction to enter the original order must be heeded by the court, irrespective of its source. Furthermore, the court would be required to dismiss the initial petition or by valid order to declare Fox West Coast Theatres, bankrupt. Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 309, 32 S.Ct. 96, 56 L. Ed. 208. In any event, it would be impossible to grant the other relief prayed for in the petitions.

The bases of the claim of failure of jurisdiction of this court upon its primary consideration of the bankruptcy petition are, first, that Judge James was disqualified to enter the order of adjudication because Albert Leeds, his son-in-law, was an officer of the bankrupt, and, second, that bankrupt and those interested in it, fraudulently concealed from the court the matters set out in the petition.

The court would be bound to try charges of participation in a fraudulent company by its own officers, because such control of their official conduct would destroy jurisdiction to perform judicial acts. All allegations which contained such implications, however, have been stricken from the petitions upon a definite and distinct avowal of counsel for petitioners in open court that no such charges were intended to apply to any of these officials.

It is admitted that Leeds was at the time of adjudication and is now, a son-in-law of James. It is not contended that Judge James had the slightest financial interest in the proceeding or any of the actors therein. But it is also admitted that Leeds was an officer of the bankrupt until his resignation two days prior to the filing of the petition in bankruptcy, and is now an officer of the Fox West Coast Theatres Corporation. The record shows, he also acted in the business of the bankrupt under employment by the trustees. The court will consider this service as if it were continuous.

At common law and in the English Chancery practice, the existence of an actual financial interest in the litigation itself, by the judge presiding at the trial rendered the judgment, not void but erroneous and subject to reversal on appeal for that reason.[1] Although there is authority to the contrary in this country,[2] it has generally been held by the courts of the various states, that where there is no governing statute, jurisdiction is not withheld from a disqualified judge although the judgment may be set aside by an appellate court.[3]

Because of statutes in various jurisdictions, however, relationship of a judge to a party to the litigation does render a judgment of the officer or of the entire tribunal, either voidable or in some instances void,[4] whether the disqualification be known to the judge at the time of determination or not. Even under such strict enactments, relationship of the judge to a person who has a strong interest, either by financial connection, or by conviction in a depending cause, is not a disqualifying factor.[5] The person who is related to the judge must be technically a

[1] See Dimes v. Grand Junction Canal, 3 House of Lords 759, 785–6; Coltrane v. Templeton, 4 Cir., 106 F. 370, 377.

[2] See Chicago & Atlantic Railway Co. v. Summers, 113 Ind. 10, 17, 14 N.E. 733, 3 Am.St.Rep. 616.

[3] Utz & Dunn Co. v. Regulator Co., 8 Cir., 213 F. 315, and cases there cited.

[4] McClaughry v. Deming, 186 U.S. 49, 68, 22 S.Ct. 786, 46 L.Ed. 1049; Oakley v. Aspinwall, 3 N.Y. 547; Sigourney v. Sibley, 21 Pick., Mass., 101, 106, 32 Am. Dec. 248; Lindsay-Strathmore Irrigation Corp. v. Superior Court of Tulare Co., 182 Cal. 315, 331, 187 P. 1056. In each of these cases the disqualification of the judge was established by a statute absolute in its terms.

[5] Chinette v. Conklin, 105 Cal. 465, 38 P. 1107; Matter of Dodge & Stevenson Manufacturing Co., 77 N.Y. 101, 107, 33 Am.Rep. 579; Bank of Lansingburgh v. McKie, 7 How.Prac. 360.

"party" to erect the bar. The Fox West Coast Theatres was the only party to the bankruptcy. Leeds was not a party.

 But no law of the United States incorporates the type of provisions above outlined. Decisions based upon these enactments are, therefore, distinguishable. In the absence of federal legislation, these drastic state statutes would furnish no guide, for the standards of the common law would establish the criteria. The Congress have, however, provided machinery whereby a party to the litigation may require a judge to disqualify himself under specific conditions.[6] Since relationship is provided for, in this enactment, the remedy outlined is exclusive. Upon a motion, if, "in his opinion", his relationship to a "party" is such that it disqualifies him, the judge shall not sit at the "trial". The federal act which is controlling in this cause, then, as concerns relationship, vests the judge with judicial discretion.[7] It will be noted that disqualification for actual interest or bias in the controversy under the terms of the act, is absolute, if the conditions of the law are met. Thus a distinction between relationship to a party and personal interest in the cause itself which appears to be founded upon discrimination as to the motivation of conduct, is established. Under this enactment, if the judge is convinced that his relationship to a party will not sway his judgment, he is not authorized to act under its terms and transfer the cause.[8]

 It is a work of supererogation, in view of the committal of the effect of this circumstance to the sense of propriety of the judge himself to go further but for conclusive effect other clauses of this enactment may be noted. The law passed by the Congress, does not prevent a judicial officer, disqualified under its provisions, from passing upon matters concerning which there is no contest, but only from sitting "on the trial".[9] Adjudications of bankruptcy follow as matter of course the filing of a voluntary petition containing appropriate jurisdictional allegations.[10] In the absence of the judge the order may be entered by a referee.[11] In some districts, such orders are entered under rule, without other direction and without the signature or consideration of the

---

[6] "Whenever it appears that the judge of any district court is in any way concerned in interest in any suit pending therein, or has been of counsel or is a material witness for either party, or is so related to or connected with either party as to render it improper, in his opinion, for him to sit on the trial, it shall be his duty, on application by either party, to cause the fact to be entered on the records of the court; and also an order that an authenticated copy thereof shall be forthwith certified to the senior circuit judge for said circuit then present in the circuit; and thereupon such proceedings shall be had as are provided in sections 17 and 18 of this title." Section 24, Title 28 U.S.C.A.

[7] Coltrane v. Templeton, supra: The ill-considered dictum in Ex parte N. K. Fairbank Co., D.C.M.D.Ala.N.D., 194 F. 978, 987, is a plain perversion of the meaning of the statute when applied to "relationship." In re Eatonton Electric Co., D.C., 120 F. 1010, is an opinion reflecting the exercise of judicial discretion in regard to relationship.

[8] See Spencer v. Lapsley, 20 How. 264, 61 U.S. 264, 266, 15 L.Ed. 902. "he was not authorized to act under the statute, except on motion."

[9] Since the judge is in any event only disqualified by the statute from sitting at the trial, the granting of preliminary orders are not within the purview. Borough of Hasbrouck Heights, N. J., v. Agrios, D.C., 10 F.Supp. 371, 374; Coltrane v. Templeton, supra. The action of a judge in dismissing a proceeding in involuntary bankruptcy where he knowingly had a remote interest financially did not render the order void. Utz & Dunn v. Regulator Co., 8 Cir., 213 F. 315, 319, 320—"He would have failed in [his] duty had he renounced a jurisdiction imposed by law, however disagreeable."

[10] Hanover National Bank v. Moyses, 186 U.S. 181, 191, 22 S.Ct. 857, 46 L. Ed. 1113; In re Southern Arizona Smelting Co., 9 Cir., 231 F. 87, 90; In re Garneau, 7 Cir., 127 F. 677, 680.

[11] "Upon the filing of a voluntary petition the judge shall hear the petition and make the adjudication or dismiss the petition. If the judge is absent from the district, or the division of the district in which the petition is filed at the tme of the filing, the clerk shall forthwith refer the case to the referee." Section 41(g), Title 11 U.S.C.A. "Referees respectively are invested, subject always to a review by the judge, within the limits of their districts as established from time to time, with jurisdiction to (1) consider all petitions referred to them by the clerks and make the adjudications or dismiss the petitions." Section 66, Title 11 U.S.C.A.

judge.[12] Therefore, even though the judge were related to a "party" to the litigation, his power to allow a voluntary petition in bankruptcy, would not be withdrawn, since no contest is permissible and conformity of the allegations to the statute is alone involved.

Under the statute of the United States which governs this case, the mere existence of a ground for disqualification is never sufficient alone to withdraw the power of action from a judge. As a condition precedent to such a result, a party must, by proper petition, call the matter to the attention of the court.[13] If this is not done, whatever the grounds, jurisdiction attaches and the particular judge has authority to act.[14] No such petition was filed in these proceedings.

Unless the situation falls, then, under the absolute directions of the enactment and unless the conditions precedent have been strictly followed, in the federal courts a judge who might be disqualified, has power to act, and his orders are final at least when the time for appeal has lapsed. Since a like doctrine was adopted in the English Chancery practice, no basis exists for a stricter rule. If then the extralateral conduct of the bankrupt did not withdraw the authority of the court to act, Judge James had the unqualified right to enter the order attacked. It seems only fair to say, although it has no relation to the jurisdiction, that there seems no possible ground for criticism of the judge in this case for the entry of an order of adjudication in a proceeding based upon a voluntary petition in bankruptcy upon the naked fact of his relationship to a person, who, although an officer, had no financial interest in the bankrupt.

But petitioners here contend that even though the judge had the right to enter the order in the ordinary case, the court lacked jurisdiction, because the acts alleged in the instant petitions were committed by the bankrupt, its subsidiaries and the holding companies and concealed from the judge at the time of its entry. This, it is alleged, constituted a fraud upon the court and rendered the adjudication void. It must be determined at this stage, whether the alleged fraud affected the jurisdictional basis of the proceeding in voluntary bankruptcy.[15] If it did, the entry must be expunged. If it did not, the solution will depend upon other principles.

Primarily, it must be determined what are the foundation stones of an order of adjudication on a petition in voluntary bankruptcy. The law[16] requires first, that the petition be presented to a court of the appropriate district,[17] second, that petitioner be one of the persons or entities privileged by the Acts of Congress[18] to voluntarily apply for adjudication in bankruptcy, third, that he owe debts,[19] fourth, that the petitioner offer to distribute his assets among his creditors.

[12] "In all voluntary cases, when the judge is in the district, and no objections are on file, the clerk shall, upon filing the petition for adjudication, as of course, enter of record and file the order of adjudication and order referring the cause to the proper referee * * *" Rule No. 4 of the United States District Court for the District of Oregon relating to Bankruptcy.

[13] The act specifically provides that the judge shall disqualify himself "on application by either party." Section 24, Title 28 U.S.C.A. In cases only where such application is made, on grounds made absolute by the enactment the judge loses jurisdiction, Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L. Ed. 481, in accordance with the rule relating to statutory disqualification.

[14] "it [Section 24, Title 28 U.S.C.A.] does not prohibit a judge from acting nor declare his judicial action void merely because of the existence of disqualifying ground." Utz & Dunn v. Regulator Co., supra.

[15] In a comment on a very similar charge, the court in Re Marine Transit Corporation, 2 Cir., 79 F.2d 232, 234 say: "Whether the claimed fraud in the conduct of the affairs of these corporations of which these appellants so bitterly complain can be proved or not, it stands separate and apart from the filing of the petition in bankruptcy."

[16] The statute reads "any qualified person may file a petition to be adjudged a voluntary bankrupt." Section 95(a) Title 11 U.S.C.A. The other jurisdictional features are implied.

[17] Royal Indemnity Co. v. American Bond Co., supra; In re Guanacevi Tunnel Co., 2 Cir., 201 F. 316; In re Carnera, D.C., 6 F.Supp. 267, 269.

[18] In re C. Jutte & Co., 3 Cir., 266 F. 357.

[19] In re Walrath, D.C., 175 F. 243.

If all these elements are present, jurisdiction is founded.[20] The tribunal becomes vested with control over all the property of the bankrupt and the power to uncover concealed assets. Thus sufficient guarantees are established to compel the bankrupt to carry out his announced intention to distribute his possessions rateably among those entitled thereto.[21] On the other hand, the court is not empowered to grant adjudication in voluntary bankruptcy which is not based upon these vital elements and if absence of any be subsequently shown may set the order aside.

The volition of the petitioner is not a jurisdictional element. In the case of an individual, the petition speaks for him and no trouble is ordinarily discovered. In ascertaining whether a corporation has actually presented itself for adjudication, great difficulties are encountered. The duly qualified officers of the corporation must by proper procedure commit it to such a course. But only stockholders or others interested financially in the corporation itself, are permitted to contest upon this ground because these alone are assumed to have an interest in the question of volition.

Fraud upon the court and concealment are discussed in the class of cases which depend for basis upon the presence or absence of volition of corporations to be adjudicated in bankruptcy.[22] Stockholders have been permitted to move against an adjudication based upon a petition filed by directors who had been ousted from control.[23] For an equitable tribunal will not permit the directors of a corporation to misuse the authority vested in them by acting against the interests of its stockholders. The term "fraud upon the court" is used to explain the setting aside of an order based upon a petition apparently regular in form and containing the statutory averments. These decisions do not extend the rule to any other fraudulent conduct upon the part of a petitioning corporation. The rationale of opinions then, must be that the will to become a bankrupt is lacking and that to permit adjudication would consummate a fraud upon those who hold an interest in the corporation.

One of the reasons for accepting this explanation of these opinions is that a creditor is not permitted to question such an order, upon the ground of fraud or otherwise. There are no terms in bankruptcy. Thus all orders previously entered are subject to the scrutiny of the court during the pendency of the litigation. Therefore, when the court determines that the basis of such an order is inequitable and constitutes a fraud upon the stockholders it has the power to set it aside upon attack by them because the petition was not voluntary. The question of volition is one which concerns only the individual or entity on whose behalf the petition for adjudication is filed.[24] The courts therefore do not assign lack of jurisdiction as a basis for vacating orders of adjudication but equitable considerations are used to accomplish the result.

---

[20] It was held that the Bankruptcy Act of 1898 did not deprive creditors of their property without due process of law notwithstanding the fact that, "Adjudication follows as matter of course, and brings the bankrupt's property into the custody of the court for distribution among all his creditors." Hanover National Bank v. Moyses, supra, 22 S.Ct. 861.

[21] "He may be, in fact, fraudulent, and able and unwilling to pay his debts; but the law takes him at his word, and makes effectual provision, not only by civil, but even by criminal, process to effectuate his alleged intent of giving up all his property." In re Fowler, 1 Low. 161, Fed.Cas.No.4998, quoted with approval in Hanover National Bank v. Moyses, supra.

"Antecedent fraud in the conduct of the affairs of the corporation is not fraud concerning which the bankruptcy court is powerless to deal if and when that fraud is made to appear." In re Marine Transit Corporation, supra; In re Farrell Realty Co., D.C., 10 F.2d 612.

[22] In the following cases the adjudication has been set aside upon petition of the receiver of the state court on the ground of an abuse of power by persons acting as directors which was concealed from the bankruptcy court: Zeitinger v. Hargadine-McKittrick Dry Goods Co., 8 Cir., 244 F. 719; In re Campbell County Hardware Co., D.C., 15 F.2d 78; In re E. C. Denton Stores Co., D.C., 5 F. Supp. 307. See In re Mississippi Valley Utilities Corporation, D.C., 2 F.Supp. 995.

[23] In re Beaver Cotton Mills, D.C., 275 F. 498.

[24] See In re Ives, 6 Cir., 113 F. 911, where the creditor was not permitted to have an adjudication set aside on the ground that one of the partners of the petitioning firms was non compos mentis.

It is contended that the court should extend the scope of this doctrine and hold not only that the rule covers inequitable conduct of the bankrupt toward creditors but also that the defect is one of jurisdiction. Such an extension would violate the statutes relating to bankruptcy and well established principles founded thereon.

A creditor holding a provable claim may, of course, oppose adjudication or move to set such an order aside where the jurisdictional elements are lacking.[25] An overwhelming number of authorities hold that a creditor holding a provable claim may not oppose the adjudication upon a voluntary petition[26] filed in the designated court by a qualified person where the necessary allegation as to willingness to distribute the property is contained therein,[27] even where volition of the corporation is claimed to be absent because that is none of his concern.[28] Since he can not originally oppose he can not move to set aside an order based upon the voluntary petition of a corporation, even if fraud or inequitable conduct characterize the design of the bankrupt.[29] Thus it has always been held that if the petition be voluntary, and filed in the designated court by a person or corporation expressing a desire to distribute all the property, neither actual solvency nor inequitable motives of the bankrupt avail a creditor.

The Congress have established the standards and by these the court should be ruled. The very purpose of these enactments involves inequalities and injustices. The statutes prevent the creditor from realizing upon a legal claim and force him to share rateably in the property of the bankrupt.[30] The conduct of many persons who take advantage of these acts might well be characterized as fraudulent. However immoral the action of a petitioner may be, and however fraudulent when judged by the tests of the law ordinarily applied, the court of bankruptcy can not frustrate his desire to take advantage of the act upon

---

[25] In re Guanacevi Tunnel Co., supra; In re Garneau, supra.

[26] Involuntary proceedings must be distinguished, for there the creditors are by statute given the right to intervene and object. In re St. Lawrence Condensed Milk Corp., 2 Cir., 9 F.2d 896.

[27] 1 Remington on Bankruptcy Section 208; In re American Bond & Mortgage Co., 7 Cir., 61 F.2d 875, 876; In re Morgan, D.C., 48 F.2d 385, 386; In re Ives, supra; Johnson v. Norris, 5 Cir., 190 F. 459, 463, L.R.A.1915B, 884.

[28] See Royal Indemnity Co. v. American Bond & Mortgage Co., supra.

[29] Opinions in voluntary bankruptcy proceedings which do not permit a vacation of the order of adjudication for alleged fraud upon the court at the instance of a creditor are: In re Swift, D.C., 259 F. 612; Bank of Elberton v. Swift, 5 Cir., 268 F. 305; In re Dressler Producing Corporation, 2 Cir., 262 F. 257; In re Seal, D.C.E.D.N.Y., 261 F. 112. See In re People's Warehouse Co., D.C., 273 F. 611; Alabama v. Montevallo Mining Co., D.C.Ala., 278 F. 989; Bell v. Blessing, 9 Cir., 225 F. 750; In re Pyatt, D.C., 257 F. 362; See L. Van Bokkelen, D.C., 7 F.Supp. 639, 650, affirmed Royal Baking Powder Co. v. Hessey, 4 Cir., 76 F.2d 645; In re United Grocery Co., D.C., 239 F. 1016; See In re S. & S. Mfg. & Sales Co., D.C., 246 F. 1005. In Chicago Bank of Commerce v. Carter, 8 Cir., 61 F.2d 986, 989, the court say: "We think it is fairly well established, both on authority and principle, that a creditor may attack even an adjudication in a voluntary proceeding on the ground of either jurisdiction or fraud upon the court." The court there was considering a motion based upon lack of jurisdiction and the sentence so applied is sound. None of the authorities cited, support the addition of the phrase "or fraud upon the court." Even so the court made a distinction between "jurisdiction" and "fraud upon the court." In McDonough v. Owl Drug Co., supra, the Court in justification for the denial of a stockholders' petition to set aside adjudication, say that the leaseholders have not complained but no consideration is given to the point which of course was not involved, that the creditors and leaseholders would have had no standing to complain.

[30] The cases of Shapiro v. Wilgus, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355, 85 A.L.R. 128, and First National Bank of Cincinnati v. Flershem, 290 U.S. 504, 54 S.Ct. 298, 78 L.Ed. 465, 90 A.L.R. 391, cited by petitioners were schemes to hinder, defraud and delay creditors by the use of a court of equity. These opinions have no relation to proceedings in bankruptcy. The cardinal purpose of the bankruptcy act is to hinder and delay creditors in order to obtain a rateable distribution of the property. But "It cannot be predicated of such a proceeding [under the Bankruptcy Act] that its purpose is to defraud the attaching creditors." Bell v. Blessing, supra, 225 F. 752.

equitable grounds if the petitioner is qualified, but is required to enter an order of adjudication which is not subject to attack on such a basis.[31]

■ If this doctrine be applied to the case at bar, there was no defect in the jurisdiction. The petition was filed in the Southern District of California, Central Division, by an existing corporation duly organized and existing under the laws of that state and having its principal place of business at 1609 West Washington Blvd., Los Angeles, California in that federal district, and division for the greater portion of six months next immediately preceding the filing. The classification of bankrupt as municipal, railroad, insurance or banking corporation is specifically negatived. As a business corporation, the Fox West Coast Theatres was an entity empowered by Congress to file a petition for voluntary bankruptcy. In the petition it set out that "it is willing to surrender all its property for the benefit of its creditors and that it desires to obtain the benefit of the Acts of Congress relating to Bankruptcy." There has been no contention that the petition was not voluntary and filed by duly qualified officers authorized thereto, with full consent of the sole stockholder. Thus the peculiar doctrine that stockholders can question the volition does not come into play at all. The transfer of most of its property need not have been disclosed because the court had power to discover all the assets. It was a corporation duly organized and existent.

The order of adjudication can not, therefore, be overthrown because of fraudulent conduct by bankrupt and corporations and persons connected with it, for none of those touch the jurisdictional foundation.[32]

The petitioners are therefore confronted with the fact that an order of adjudication has been entered, founded in jurisdiction and which has become a finality by the closing of the estate. Avoidance of this conclusion is sought by the argument that the closing order was improperly entered.

■ There are three branches to the contention that the proceeding has not been closed. Petitioners claim that this condition resulted first because of a stipulation filed in the bankruptcy court, that the purchaser would pay as a part of its bid a charge of the United States against the bankrupt for income tax, second because of a stipulation entered in the record by the purchaser of the assets to indemnify the trustees for personal liability arising from the administration for a period of two years after closure, and third, because McNabb was not a qualified referee and all proceedings after adjudication including the closing order were void on account of that fact.

The first two contentions may be disposed of by the statement that both these documents were filed in the court, which nevertheless entered an order of closure, from which no appeal was taken.

The third matter requires more thorough examination. McNabb was a United States Attorney at the date of the entry of the order appointing him a referee in bankruptcy. He resigned the former position and thus became fully qualified for appointment at the time he took the oath as referee and assumed the duties of that office. These bankruptcy proceedings were assigned to him by special order after he had entered the office. The statute provides that a person is not eligible to appointment as referee unless "not holding any office of profit or emolument under the laws of the United States." Section 63, Title 11 U.S.C.A.

■ The law created the office of referee directly. Section 61, Title 11 U.S.C.A. Another enactment grants power to the court of bankruptcy to appoint persons to fill the office of referee. Section 62, Title 11 U.S.C.A. There is no special court created by the designation of a person to hold the office of referee. The tribunal exercising jurisdiction in bankruptcy in this instance, is the United States District Court for the Southern District of California, Section 11, Title 11 U.S.C.A. The referee is merely an officer of that court and is not endowed with independent judicial authority.[33] McNabb was named by the court as referee. He took the oath, assumed the office and functioned as referee. The judicial acts of an officer sitting with color of right even though he be illegally appointed or though he does not possess the qualifications to hold the

---

[31] Bank of Elberton v. Swift, supra; Alabama v. Montevallo Mining Co., supra.

[32] In re S. & S. Mfg. & Sales Co., supra.

[33] Weidhorn v. Levy, 253 U.S. 268, 271, 40 S.Ct. 534, 64 L.Ed. 898.

office, can not be collaterally questioned.[34] The validity of proceedings before him is beyond cavil even though he illegally' held office. The court already had been created and had jurisdiction of the subject matter and the parties. There is no analogy between this case and that of trial by court-martial where the authority not only designates the officers to sit but creates the court itself. A court-martial is a special court of limited jurisdiction and there could be no judges de facto. The court of bankruptcy is a creation of statute deriving its powers from the provision of the Constitution of the United States, U.S.C.A. Const. art. 1, § 8, cl. 4, and possesses general jurisdiction.[35] If McNabb fell within the terms of the statute, and it be construed to establish a disqualification like interest on his part in the subject matter of the case, his acts were void, under the authorities above cited. But ineligibility based upon the enactment would not nullify his orders.[36]

■ A review of the proceedings furthermore indicates that McNabb was a duly qualified referee. His designation was made while he was holding another office but the appointment did not take effect until he took the oath as referee, at which time he had divested himself of the office, the tenure of which would have disqualified him. There is conflict in opinions rendered in the courts of the various states as to whether qualification must be possessed by the person designated at the time of the selection, or at the time of taking office.[37] Many opinions requiring possession of qualifications at the date of designation may be disposed of by the distinction between elective and appointive positions. At the time McNabb assumed office, the District Court of the United States of the Southern District of California was still vested with the authority to appoint a referee. Inasmuch as its previous order of designation had not been discharged, it must be concluded that on March 1st, 1933, the court still intended to name McNabb. The power had not been exhausted by the order as it would have been, if the selection had been made by the electorate at a statutory time.[38] The consistent federal administrative practice of appointment has been, that if an appointive officer is qualified at the time of assumption of office, he becomes legally vested with its authority, albeit he may not have had such qualification at the time of designation by the appointing authority.

■ There is a vague charge in the petition that the rules of the court were violated by the appointment of a receiver prior to adjudication and by the assignment of the case to Judge James and to McNabb as referee out of the usual order. At most, these were mere irregularities of which advantage might possibly have been taken upon appeal. These incidents certainly have no relation to jurisdiction.

■ There is the further suggestion that the sale was void because Referee McNabb accepted a less fee than that to which he was entitled under the statute, and that the order of confirmation passed by Referee Moss was invalid because by contract between all the referees of the district he received a fourth of the fee charged by Referee McNabb.[39] But these matters have no effect upon the jurisdiction to enter the order of closure. The sale was confirmed upon review by the District Court which had power to act. There was no appeal taken from this order of confirmation.

---

[34] Ex parte Henry Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765.

[35] The cases cited by petitioners make this very distinction. Deming v. McClaughry, 8 Cir., 113 F. 639; McClaughry v. Deming, 186 U.S. 49, 64, 65, 22 S. Ct. 786, 46 L.Ed. 1049.

[36] Olson v. Hawkins, 135 Wis. 394, 116 N.W. 18 (premature appointment); Masterson v. Matthews, 60 Ala. 260 (appointment declared void after judgment); Blackburn v. State, 3 Head 690, 40 Tenn, 690 (ineligible).

[37] The majority view is that it is sufficient if the qualifications requisite be present at the time of the assumption of the office. See Note 88 A.L.R. 812.

[38] This basis of the minority view is pointed out in Searcy v. Grow, 15 Cal. 117, 121, as to an elective office—"We do not see how the fact that he became capable of taking the office, after they [the electors] had exhausted their power, can avail the appellant. If he was not eligible at the time the votes were cast for him, the election failed."

[39] Moss received the same amount whether he sat in the case or not. This situation has no relation to that condemned by the courts because the fee depended upon the decision rendered. See Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749, 50 A.L.R. 1243.

From every viewpoint therefore, the final order finding the estate fully administered, discharging the trustees and ·declaring the case closed was founded in jurisdiction and is final.

The court will therefore not deal with the merits of the fraud alleged. No probe of the motives and designs of the bankrupt, its officers, subsidiaries and the holding companies, the various charges of criminality contained in the petitions or the effect of notice and knowledge or lack of notice upon Tally and Corbar Corporation would be effective upon the petition and answers without further testimony. But even though all these charges be true, concerning which the court expresses no opinion, there are many obstacles to the vacation of the order.

As before noted in the consideration of the primary jurisdiction even a creditor holding a provable claim had no standing to defend against the petition, or move against the order once granted.[40] Petitioners did not hold provable claims for future rents.[41] Their other claims have been paid, thus they have no standing to attack.[42] Petitioners were participants in the proceedings and the matters now relied upon were litigable if not litigated therein. The adjudication can not be insulated from the knowledge of the court gained in the controversies which followed because at all times during the pendency of the proceeding[43] this tribunal had the right to reconsider the initial order and to set it aside if erroneous or void.

The instant petitions do not ask for a reopening of the cause, but depend for their force solely upon the original lack of jurisdiction. The whole object was to attack the order of adjudication.[44] The charges based upon the subsequent administration of the estate were only a preventative against the use of these proceedings, as an estoppel against petitioners. This interpretation of the purpose of the peti-

tions was reiterated by counsel upon the argument. But the order of adjudication can not be vacated without reopening the proceeding.[45]

The court must then consider its present jurisdiction to open a closed estate for the purpose set out in the petition. It is clear that during the whole history of bankruptcy in England and the United States since the establishment of a court of plenary power, that no instance has been found where a bankruptcy estate has been opened for the purpose of setting aside the order of adjudication. Thus it has been for a century or more the consensus of opinion of the bar that the orders taken during the course of a bankruptcy proceeding are after closure, finalities.

The power of a bankruptcy court in this country has been conferred upon the Federal Courts by the Congress pursuant to the plenary power granted to them by the provisions of the Constitution of the United States. The boundary of the authority of the courts of bankruptcy has been marked by the statutes and the failure of the laws to provide authority to act in any particular contingency results in a lacuna of jurisdiction.[46] Such is the situation which confronts the court in the instant case. Authority has been conferred to "close estates, whenever it appears they have been fully administered, by approving the final accounts and discharging the trustees, and reopen them whenever it appears they were closed before being fully administered". Section 11, Subdivision 8, Title 11 U.S.C.A. Since there are no terms of the bankruptcy court, and since all proceedings there are from certain aspects in rem, a final limit must be placed to prevent relitigation of such causes. Congress have logically erected as a bar, the order closing the estate. Only the one exception is vouchsafed by the statute. A court may reopen an estate

40 Alabama v. Montevallo Mining Co., supra; In re Pyatt, supra; Bell v. Blessing, supra.

41 Manhattan Properties v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L. Ed. 824.

42 In re New York Tunnel Co., 2 Cir., 166 F. 284, 285.

43 Sandusky v. National Bank, 23 Wall. 289, 90 U.S. 289, 293, 23 L.Ed. 155.

44 McDonough v. Owl Drug Co., supra.

45 No act can be done relating to a closed estate prior to a reopening. In re Schwartz, 2 Cir., 4 F.2d 895.

46 The decisions relating to the filing of claims where the estate has once been closed and there is an attempt to reopen upon the ground of lack of complete administration, make it abundantly clear that irrespective of the equities, limitations set by the bankruptcy acts result in a failure of jurisdiction. In re Meyer, D.C., 181 F. 904; In re Paine, D.C., 127 F. 246; In re Shaffer, D.C., 104 F. 982.

when the res has not been fully administered. The supposition of this single circumstance as a basis of judicial action after an estate has been closed excludes all others and is in accord with the inherent nature of this type of proceeding.[47]

The court of bankruptcy is a court of equity in certain aspects, but the statute which is the source of power, also sets the limitation upon the power. Although this tribunal is guided by principles of equity, it is powerless to act where Congress have not granted jurisdiction.[48] Since no authority has been entrusted to the bankruptcy court to reopen a closed estate except where complete administration has not been accomplished, the equitable doctrine of setting aside final judgments for extrinsic fraud, which does not touch the jurisdictional basis, has no application.

The petitions are dismissed for lack of jurisdiction.

---

[47] The few decided cases place this construction upon the act. Kinder v. Scharff, 231 U.S. 517, 34 S.Ct. 164, 58 L.Ed. 343; In re Graff, 2 Cir., 250 F. 997; In re Schwartz, supra; In re Sayer, D.C., 210 F. 397; See In re Schulz, D.C., 2 F. Supp. 364; In re Glory Bottling Co., 2 Cir., 283 F. 110. In the one opinion which did permit a reopening to change the name of a creditor in a no asset case, the judge was apparently motivated by an oriental theory of justice to prevent what he conceived as a wrong done to the bankrupt notwithstanding the statutory limitations upon the power of the court.

The opinions which announce the rule of discretion require a claim of unadministered assets to found the action. In re Carlucci Stone Co., D.C., 269 F. 795.

[48] See In re Glory Bottling Co., supra.